234 P.3d 1041 (2010)
235 Or. App. 658
Brad BELKNAP and Lorraine Nicole Brulc, individually and on behalf of all persons similarly situated, Plaintiffs-Appellants, Cross-Respondents,
v.
U.S. BANK NATIONAL ASSOCIATION, dba U.S. Bank, Defendant-Respondent, Cross-Appellant.
030100042; A138636.
Court of Appeals of Oregon.
Argued and Submitted November 23, 2009.
Decided June 16, 2010.
*1042 A.E. Bud Bailey argued the cause for appellants-cross-respondents. On the opening brief were J. Dana Pinney, Jacqueline L. Koch, and Bailey, Pinney & Associates. On the reply brief were A.E. Bud Bailey, J. Dana Pinney, and Bailey, Pinney & Associates.
Christopher F. McCracken, Portland, argued the cause for respondent-cross-appellant. With him on the briefs were Timothy R. Volpert, Carol J. Bernick, and Davis Wright Tremaine LLP.
Before SERCOMBE, Presiding Judge, and BREWER, Chief Judge, and ARMSTRONG, Judge.[*]
SERCOMBE, P.J.
This case began as a class action by former employees of U.S. Bank National Association (bank) to recover penalty wages. The class plaintiffsformer employees whose employment had terminated in the three years preceding the filing of the complaintalleged that the bank had failed to timely pay them all their wages, as required by ORS 652.140. That statute requires generally that employees who quit or who are fired must be paid all wages earned and unpaid at the time of termination within a certain time period, which varies depending on the circumstances of the separation from employment. The class plaintiffs sought penalty wages under ORS 652.150 and attorney fees under ORS 652.200.
Pursuant to the class plaintiffs' request under ORCP 32 C, the trial court certified a class composed of those former employees who gave 48 or more hours' notice of intent to terminate employment and who were not paid timely pursuant to the statute. After years of discovery and motion practice, the bank moved to decertify the class, and the court granted the motion. The case between the bank and the two named plaintiffs formerly the class representativeswent forward. After a three-day trial, the jury returned a verdict in favor of plaintiff Brulc on her claim and in favor of the bank on plaintiff Belknap's claim. The trial court awarded Brulc nearly $16,000 in attorney fees.
Plaintiffs Belknap and Brulc appeal, raising four assignments of error. The bank responds with three cross-assignments of error and also cross-appeals, raising two assignments of error of its own. For the reasons discussed below, we reverse the award of attorney fees on cross-appeal and otherwise affirm.
The relevant facts are largely procedural. As noted, this case began as a class action. ORCP 32 H requires that notice be given to the defendant in a potential class action before the action is commenced. That rule provides, in part:
"H(1) Thirty days or more prior to the commencement of an action for damages pursuant to the provisions of sections A and B of this rule, the potential plaintiffs' class representative shall:

*1043 "H(1)(a) Notify the potential defendant of the particular alleged cause of action; and
"H(1)(b) Demand that such person correct or rectify the alleged wrong."
In September 2002, counsel for plaintiffs sent a letter to the bank that purported to be a "Pre-Litigation Notice Pursuant to ORCP 32 H." That letter stated, in part:
"This office represents potential class plaintiffs in an action against [the bank]. The potential class plaintiffs were employees of [the bank] whose employment ended within the past three (3) years and who were not paid all wages when due as required by ORS 652.140.
"Plaintiffs demand that these violations be cured by making payment of all penalty wages, as calculated by ORS 652.150. * * *
"Pursuant to ORCP 32 H, the representative of the potential class plaintiffs provide this written notice that a Class Action lawsuit will be filed in 30 days, unless all class member claims are cured by [the bank] within that time.
"Unless [the bank] fully cures the alleged wrongs within thirty (30) days, a Class Action lawsuit will be filed for money damages, costs, and attorney fees. All cure efforts must be made through this office."
Counsel for the bank responded to the letter, asserting that the letter did not meet the requirements of ORCP 32 H. Specifically, counsel maintained, the letter did not identify the "potential class representative" or the "particular alleged cause of action." Noting that the bank could not, with only the information in the letter, "adequately investigate the vague allegations" in the letter and "attempt a cure," counsel sought the name of the proposed class representative and the "specific nature of the alleged violation." In a follow-up telephone conversation, plaintiffs' counsel refused to provide the requested information. Plaintiffs' counsel ultimately filed a complaint.
After a number of motions and related orders, the trial court certified a class nearly two years later, in July 2004. In support of their motion for class certification, the class plaintiffs asserted that resolution of the claims in the class action would be accomplished primarily by documentary evidence, so that the potential complexity of the case should not bar a class action. In its order certifying the class, the court found:
"1. The class consists of approximately 600 to 1,900 persons;
"2. There are common questions of law and fact;
"3. The claims of the representative plaintiffs are typical;
"4. The representative parties will fairly and adequately protect the intent of the class; [and]
"5. The representative parties have complied with ORCP 32 H."
(Footnote omitted.) The trial court stated that the "requirements of ORCP 32 A have been met, and under ORCP 32 B a class action is a superior method of adjudication." In response to the bank's concerns, the trial court stated:
"While it is true that there may be contested facts in many of the cases (perhaps 25%), both sides would be motivated to resolve most of these cases after further discovery. Furthermore, the remaining issues could be reasonably dealt with by taking advantage of the flexibility of the trial court in managing class action cases."
Additional pretrial maneuvering ensued. For example, plaintiffs sought, and received, class-wide discovery from the bank. Based on that discovery, the bank moved to decertify the class; the motion was denied. Plaintiffs filed a number of ORCP 21 motions against the bank's answer; the motions were denied in part and granted in part. Plaintiffs moved for an order compelling the production of the bank's documents; the court ordered the bank to produce certain documents prepared by its lawyers. Plaintiffs moved for partial summary judgment on the issue of the bank's liability; the trial court granted the motion.[1] Those motions, and a *1044 number of others, were filed and determined. The carbon footprint of the trial court file grew deep.
In July 2007, nearly five years after receiving plaintiffs' notice that they would file a class action lawsuit, the bank filed a renewed motion for decertification. The bank argued that the three-year history of the case following certification had demonstrated that class action treatment was not a superior method of adjudication. While that motion was pending, the class plaintiffs filed what the bank describes as a "flurry" of motions. Finally, in September 2007, the trial court agreed with the bank and granted its motion for decertification. The court found "that class treatment is not a superior method of adjudicating the case in a fair and efficient manner. ORCP 32 B." The court explained:
"Plaintiff[s have] throughout claimed and assured the court that the case would essentially be resolved by the documents. While [the bank's] record keeping may have its problems, it appears that [the bank] has complied with the legal requirements of employment record keeping. The documents leave many different types of factual issues unresolved in most, if not all, of the some six hundred or more claims filed or expected to be filed. To resolve these factual issues, witnesses will have to be called and, in most if not virtually all cases, the resolution of one individual's factual issues will have no impact on resolving another's claim.
"* * * * *
"After extensive discovery and motion practice and in the face of the reality presented by the number of individual fact determinations for a large group of individual claimants, plaintiff[s have] offered no plan to efficiently resolve the necessary fact issues at trial. The court has asked plaintiff[s] to articulate a trial plan. Most recently plaintiffs have continued to avoid answering the court's request, but suggested that the plaintiffs' extensive motion practice close in to the trial date will resolve many claimants' cases, and that they cannot offer a plan until the results of the motion are known. Additionally, plaintiffs suggest that the court would be able to resolve damage issues without a trial. The plaintiffs have not provided sufficient details. The court has little confidence that plaintiffs will present a viable, efficient trial plan in a timely manner.
"* * * * *
"In re-analyzing the case at this point in time, with the benefit of the discovery process, the results of the motion practice, and knowledge of the nature of the claims made and the defenses asserted, the court concludes that class treatment is not a superior method in resolving the controversy. In deciding this motion, the court on its own considered various schemes of partial decertification, but with each, in the final analysis, it was more an exercise in mitigating the problems than creating a process that results in class treatment being a superior method of adjudication."
As noted, the case thereafter proceeded with only Belknap and Brulc as plaintiffs. The bank made a pretrial offer of judgment to Brulc for $682.91 in penalty wages plus prejudgment interest and $20,000.00 in attorney fees. Brulc rejected the offer, the case went to trial, and the jury awarded Brulc $490 in damages. The jury found against Belknap and awarded the bank $840.65, the result of an overpayment by the bank. After trial, Brulc filed a petition for attorney fees, seeking over $151,000. The bank objected and, as noted, the trial court ultimately ordered attorney fees of $15,731.84.
We begin with plaintiffs' arguments on appeal. We reject all of plaintiffs' assignments of error without discussion, except for their first assignment of error, which we address briefly below.
In their first assignment of error, plaintiffs argue that the trial court erred in decertifying *1045 the class. They assert that the trial court erroneously focused on only one of the statutory factors that trial courts are to consider in determining whether to allow an action to proceed as a class action. Specifically, plaintiffs argue that the trial court focused only on ORCP 32 B(3), which provides that one of the factors "pertinent" to the finding that a class action is a superior method of adjudication is "[t]he extent to which questions of law or fact common to the members of the class predominate over any questions affecting only individual members[.]"[2] They also assert that, to the extent that individual determinations would have had to be made as to each of the plaintiffs, it was a result of the bank's poor record keeping: "The trial court erroneously allowed defendant's sloppy record keeping to derail certification of a class for which defendant's own records most often reflected that class members had given proper notice. * * * Defendant * * * cannot construct predominant `individual' issues by failing to maintain accurate payroll records." We reject the latter contention without discussion, and we briefly address plaintiffs' contention that the trial court erred in relying solely on ORCP 32 B(3) in decertifying the class.[3]
"[W]e give a trial court's determination whether a proceeding shall be conducted as a class action wide latitude, because it is largely a matter of judicial administration." Froeber v. Liberty Mutual Ins. Co., 222 Or.App. 266, 275, 193 P.3d 999 (2008) (internal quotation marks omitted). In light of that standard, we have little trouble concluding that the trial court did not err in decertifying the class. First, as a factual matter, we disagree that the trial court relied exclusively on the single factor set out in ORCP 32 B(3). As the trial court's ruling shows, the court based its decision on the fact that plaintiffs had not presented a viable trial plan, despite the trial court's request for one; that court-ordered mediation "resolved no claims"; that the case was not, as plaintiffs claimed, a "document case"; that individual questions of factquestions that would require numerous witnesses to be calledpredominated; that, "in most if not virtually all cases, the resolution of one individual's factual issues will have no impact on resolving another's claim"; and *1046 that the court could not, despite its efforts, conceive any subclass that would extinguish the problems with the class that had been certified.
Second, and in any event, ORCP 32 B does not require that the trial court consider each and every one of the listed factors in making its determination whether to allow an action to continue as a class action. Rather, the rule states only that the listednonexclusivefactors are "pertinent" to the determination. The trial court correctly considered the factors relevant to a determination in this case whether to decertify the class, and it concluded, as required by the rule, that "class treatment is not a superior method of adjudicating the case in a fair and efficient manner." The trial court did not err in decertifying the class.
Having disposed of plaintiffs' assignments of error, we turn to the bank's arguments on appeal. We reject without discussion the bank's cross-assignments of error and its first assignment of error on cross-appeal.[4] We address below the bank's second assignment of error on cross-appeal.
Plaintiff Brulc requested, in round numbers, $151,000 in attorney fees; the trial court awarded nearly $16,000. In its second assignment of error on cross-appeal, the bank contends that awarding even that amount was error, because ORS 652.200(2) precludes the award of any attorney fees. That statute provides:
"In any action for the collection of wages, if it is shown that the wages were not paid for a period of 48 hours, excluding Saturdays, Sundays and holidays, after the wages became due and payable, the court shall, upon entering judgment for the plaintiff, include in the judgment, in addition to the costs and disbursements otherwise prescribed by statute, a reasonable sum for attorney fees at trial and on appeal for prosecuting the action, unless it appears that the employee has willfully violated the contract of employment or unless the court finds that the plaintiff's attorney unreasonably failed to give written notice of the wage claim to the employer before filing the action."
(Emphasis added.) The bank claims that the trial court erred in awarding attorney fees because plaintiff Brulc failed to provide the bank with notice that she was asserting a wage claim.
The bank emphasizes that, as the case eventually played out, it was between Brulc and Belknap, as individual plaintiffs, and the bank. Yet, the bank asserts that "[p]laintiff Brulc and her attorneys failed to provide defendant with notice that Ms. Brulc was asserting a wage claim." (Emphasis in original.) As stated above, the class plaintiffs'" pre-litigation notice" identified neither the precise claims that would be asserted by the class, nor any of the individuals who would make up the class, and plaintiffs' attorneys refused to provide more specific information, even after the bank requested it. The bank argues:
"ORS 652.200(2) plainly and unambiguously eliminates a plaintiff's right to attorney fees when the plaintiff unreasonably fails to provide written notice of her claim before filing suit. If there is any ambiguity, it is plain that the legislature intended the notice requirement to provide the employer a chance to respond and cure before the plaintiff incurs significant attorney fees. * * * By failing to notify defendant that she had a claim, plaintiff Brulc eliminated the defendant's statutory right to correct any error before litigation was commenced. Defendant requested, but was denied, the claimant's identity, the basic information need to cure."
In short, the bank argues, ORS 652.200(2) requires that, in order to be entitled to attorney fees, a plaintiff's attorney must give notice sufficient to enable the defendant to cure the alleged wage claim. Here, it asserts, that statute required plaintiffs' attorneys to include Brulc's name in the notice.
Plaintiffs respond that, "[o]n its face, ORS 652.200 does not require the attorney to provide the name of the potential plaintiff and *1047 the notice requirement is not intended to be a difficult barrier to the plaintiff's right to mandatory fees, as evidenced by the use of the term `unreasonably' in stating the requirement for written notice." Plaintiffs argue that, here, "plaintiff's attorney did not `unreasonably fail' to give notice of the claim. Plaintiff's attorney told defendant the exact nature of the claim." Plaintiffs argue that requiring more than the notice they gave "would allow employers to subvert the law by `buying off' named plaintiffs in class actions."[5]
The parties' attorney fee dispute requires that we ascertain the legislature's intent in stating that a plaintiff is entitled to attorney fees, unless the plaintiff's attorney "unreasonably fails" to give written notice of "the wage claim" before filing an action. To do so, we examine the text and context of the statute and any pertinent legislative history that the parties have proffered, giving that history such weight, if any, as it appears to merit. State v. Gaines, 346 Or. 160, 171-72, 206 P.3d 1042 (2009).
We begin by examining the text of the statute, as "the text of the statutory provision itself is the starting point for interpretation and is the best evidence of the legislature's intent." PGE v. Bureau of Labor and Industries, 317 Or. 606, 610, 859 P.2d 1143 (1993). Here, we focus on the phrase, "unless the court finds that the plaintiff's attorney unreasonably failed to give written notice of the wage claim to the employer before filing the action," because that phrase was added to the existing attorney fee provision in 2001. Or. Laws 2001, ch. 279, § 1.
We observe, first, that the legislature required "the plaintiff's attorney" to give notice of "the wage claim." As the trial court in this case correctly stated, it is important that, although the text does not expressly state that the written notice must identify the plaintiff by name, the legislature chose to use the definite article, "the." See Anderson v. Jensen Racing, Inc., 324 Or. 570, 578-79, 931 P.2d 763 (1997) (definite article "the" functions as an adjective that denotes a particular, specified thing); State v. Hutchison, 176 Or.App. 363, 368, 31 P.3d 1123 (2001) (same). The use of the definite article indicates that the 2001 legislature intended the exception it added to ORS 652.200(2) to apply to the wage claim asserted by a specific plaintiff. Otherwise, the notice would inform an employer only that "a wage claim" would be asserted on behalf of one or more unidentified individuals. We agree with the trial court that, "[w]ithout any way of identifying the individuals covered by the notice, the employer would have no opportunity to resolve the claim before litigation" is commenced.
The legislative history confirms that the legislature's intent was to provide the employer with an opportunity to resolve the wage claim before the expense of litigation was incurred. Although in slightly different form than what ultimately was enacted, the bill that added the provision at issue was introduced by Representative Jeff Kruse. He explained that the proposed amendment
"[p]uts another step in the process as far as an employer being informed of an action so that he has a chance to respond before the thing gets to court. * * * I looked at this purely as a fairness issue. * * *
"I would like to close with a quote from Abraham Lincoln, who said, `Discourage litigation, persuade your neighbors to compromise whenever you can. As a peacemaker, the lawyer has a superior opportunity of being a good man. There will still be business enough.' * * * [The bill] just gives us one more opportunity to do something before we enter litigation."
Tape Recording, House Committee on Business, Labor, and Consumer Affairs, HB 2500, Feb. 20, 2001, Tape 31, Side A (statement of Rep Jeff Kruse). Michael Dale, the director of litigation for the Oregon Law Center, explained that sending the notice saves both the attorney and the client time, effort, and money: "It may be that [the employer] will look at it and say, `Oh, you're right. You're entitled to that money.' And why put everyone *1048 to the time and expense of doing thatof filing and responding to a lawsuitif it can be resolved amicably?" Tape Recording, House Committee on Business, Labor, and Consumer Affairs, HB 2500, Feb. 20, 2001, Tape 31, Side B (statement of Michael Dale).
The Supreme Court has stated that the "central purpose [of the wage and hour statutes is] that of assuring that one who works in a master and servant relationship, usually with a disparity of economic power existing between himself and his superior, shall be assured of prompt payment for his labors when the relationship is terminated." Lamy v. Jack Jarvis & Company, Inc., 281 Or. 307, 313, 574 P.2d 1107 (1978). In light of that general purpose, the text of the 2001 amendment, and the legislative history of the amendment, we conclude that the legislature intended to require the "written notice" referred to in ORS 652.200(2) to include the name of the plaintiff or plaintiffs. The purpose of the provision cannot be attained if the defendant is not given sufficient information to attempt to expeditiously resolve the claim before litigation commences. It follows that, because plaintiffs' pretrial notice did not include Brulc's name, counsel failed to give written notice of "the wage claim" to the employer before filing the action.
But failure to provide written notice precludes an attorney fee award only if the plaintiff's attorney did so "unreasonably." The trial court, although it concluded that the notice in this case was inadequate, nonetheless awarded attorney fees, because it also concluded that plaintiffs' counsel did not act unreasonably in failing to give notice. For the reasons explained below, we disagree.
In determining whether an actor's failure to comply with a statutory mandate is "unreasonable," it is necessary to consider the purpose of the statute. As the legislative history set out above makes abundantly clear, the purpose of the provision added by the 2001 legislature was to encourage employers to pay owed wages without the necessity of litigation. Plaintiffs argue that their attorneys' failure to provide Brule's name in the notice to the bank was not unreasonable because, to require that a plaintiff's name be divulged "would allow employers to subvert the law by `buying off' named plaintiffs in class actions."
We reject plaintiffs' argument. Giving employers notice sufficient to allow them to determine the merits of the potential plaintiff's claim and to respond to that potential claim by paying meritorious claims is exactly the purpose of the statute. It does not "subvert" the wage and hour statutes for employers to be able to satisfy, without litigation, deficiencies that are brought to their attention. And without the plaintiff's name, the employer cannot do so. That the effect of identifying the plaintiff in the limited context of class action wage and hour claims might make the class action more difficult to maintain is of no moment. The purpose of the provision is to give the employer an opportunity to cure any wage-related deficiencies without litigation, not to make class actions, with their related attorney fees, easier for plaintiffs to pursue. We conclude that plaintiff s' attorneys' failure to given written notice of the wage claimincluding the name of the plaintiff or plaintiffswas unreasonable. It follows that the trial court erred in awarding any attorney fees to plaintiff Brulc.
On cross-appeal, supplemental judgment awarding attorney fees reversed; otherwise affirmed on appeal and on cross-appeal.
NOTES
[*] Brewer, C. J., vice Edmonds, P.J.
[1] The trial court's statements made in association with its order granting the summary judgment motion seem inconsistent with its order. The trial court said, among other things, that the law is that, "if a claimant shows that they gave not less than 48 hours notice of intent to quit employment, and they were not paid timely, the employer is liable for penalty wages." That statement ignores the statutory requirement of willfulness on the employer's part. The court also said, "[D]efendant remains in a position to challenge any actual claim." That, too, seems inconsistent with an order granting summary judgment on the issue of liability. Those inconsistencies do not affect our analysis or disposition.
[2] In its entirety, ORCP 32 B provides:

"An action may be maintained as a class action if the prerequisites of section A of this rule are satisfied, and in addition, the court finds that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to this finding include:
"B(1) The extent to which the prosecution of separate actions by or against individual members of the class creates a risk of:
"B(1)(a) Inconsistent or varying adjudications with respect to members of the class which would establish incompatible standards of conduct for the party opposing the class; or
"B(1)(b) Adjudications with respect to members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;
"B(2) The extent to which the relief sought would take the form of injunctive relief or corresponding declaratory relief with respect to the class as a whole;
"B(3) The extent to which questions of law or fact common to the members of the class predominate over any questions affecting only individual members;
"B(4) The interest of members of the class in individually controlling the prosecution or defense of separate actions;
"B(5) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
"B(6) The desirability or undesirability of concentrating the litigation of the claims in the particular forum;
"B(7) The difficulties likely to be encountered in the management of a class action that will be eliminated or significantly reduced if the controversy is adjudicated by other available means; and
"B(8) Whether or not the claims of individual class members are insufficient in the amounts or interests involved, in view of the complexities of the issues and the expenses of the litigation, to afford significant relief to the members of the class."
[3] As noted in the text, the trial court found that, "[w]hile [the bank's] record keeping may have its problems, it appears that [the bank] has complied with the legal requirements of employment record keeping." Although plaintiffs complain about the bank's "sloppy" record-keeping, they do not challenge the trial court's finding that the bank complied with the relevant legal requirements governing documentation of employment actions.
[4] Some of the bank's assertions become irrelevant in light of our disposition of plaintiffs' appeal; the others we reject without discussion.
[5] The trial court explained:

"Plaintiffs do not explain what they mean by the term `buy out' the class. Presumably, they meant that the Bank might attempt to settle with any identified individual class representatives, thereby depriving the class of the class representatives need to pursue a class action lawsuit."