Argued and submitted August 13, 2010, reversed and remanded July 27, petition for review denied December 1, 2011 (351 Or 401)

Tara Crippen THOMAS,
Shelly Gillaspie and Carlin Hale,
individually and on behalf of all persons similarly situated,
*Plaintiffs-Respondents,*

*v.*

U. S. BANK NATIONAL ASSOCIATION,
dba U. S. Bank,
*Defendant-Appellant.*

Jackson County Circuit Court
080289L3; A139603

260 P3d 711

Christopher F. McCracken argued the case for appellant. With him on the briefs were Timothy R. Volpert, Carol J. Bernick, and Davis Wright Tremaine LLP.

A.E. Bud Bailey argued the case for respondents. On the brief were J. Dana Pinney and Bailey Pinney & Associates LLC.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

HASELTON, P. J.

## HASELTON, P. J.

In this interlocutory appeal pursuant to ORS 19.225,[1] defendant, U. S. Bank National Association, challenges the trial court's order denying defendant's motion to dismiss or, in the alternative, to strike plaintiffs' class-related claims in an action seeking penalties for untimely paid termination wages, *see* ORS 652.140; ORS 652.150. Defendant, consistently with the scope of our interlocutory review,[2] asserts that the trial court erred in denying its motion for any of three reasons: (1) issue preclusion bars plaintiffs' request for class certification; (2) plaintiffs' claims were barred under ORCP 21 A(3) due to parallel class actions pending at the time that the trial court decided the motion; and/or (3) a subclass of plaintiffs lacks a class representative. As amplified below, we conclude that defendant's first ground compels dismissal. Accordingly, we reverse and remand.

## I. BACKGROUND

The class action at issue in this case is one of a mare's nest of related class actions, all of which allege claims against defendant for penalties and attorney fees arising out of allegedly untimely paid termination wages, *see* ORS 652.140; ORS 652.150.[3] Each of those actions involves permutations and combinations of different employees at different times and in different locations, yielding, not infrequently, overlapping classes of plaintiffs. Because our

---

[1] ORS 19.225 provides:

"When a circuit court judge, in making in a class action under ORCP 32 an order not otherwise appealable, is of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, the judge shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order to the Court of Appeals if application is made to the court within 10 days after the entry of the order. Application for such an appeal shall not stay proceedings in the circuit court unless the circuit court judge or the Court of Appeals or a judge thereof shall so order."

[2] Under ORS 19.225, our review is limited to the three controlling questions of law identified by the trial court (set out below, *see* 244 Or App at 467-68). *Shea v. Chicago Pneumatic Tool Co.*, 164 Or App 198, 200, 990 P2d 912 (1999), *rev den*, 330 Or 252 (2000).

[3] ORS 652.140 provides, in pertinent part:

"(2)(a) When an employee who does not have a contract for a definite period quits employment, all wages earned and unpaid at the time of quitting become due and payable immediately if the employee has given to the

analysis turns on the relationship between this class action and those other class action lawsuits—particularly, *Belknap v. U. S. Bank National Association*, 235 Or App 658, 234 P3d 1041 (2010), *rev den*, 349 Or 654 (2011)—we begin by recounting the procedural history of those actions in some detail.

## A. *Belknap v. U. S. Bank National Association*

In January 2003—five years before this action was filed in January 2008—plaintiffs Belknap and Brulc brought a proposed class action against defendant in Multnomah County Circuit Court to recover penalties for untimely paid termination wages and attorney fees. *Belknap*, 235 Or App at 661. In July 2004, the trial court certified the class. *Id.* at 662. As certified, the class (hereinafter "the *Belknap* class") included defendant's former Oregon employees, whose employment had terminated between January 2, 2000 and January 2, 2003 (the three-year period preceding the filing of the complaint) and who had given 48 or more hours' notice of intent to terminate their employment, but were not paid timely termination wages pursuant to ORS 652.140. *See id.* at 661.

As we explained in *Belknap*:

"In support of their motion for class certification, the class plaintiffs asserted that resolution of the claims in the class action would be accomplished primarily by documentary evidence, so that the potential complexity of the case should not bar a class action. In its order certifying the class, the court found:

" '1. The class consists of approximately 600 to 1,900 persons;

" '2. There are common questions of law and fact;

---

employer not less than 48 hours' notice, excluding Saturdays, Sundays and holidays, of intention to quit employment."

ORS 652.150, as relevant here, provides:

"(1) Except as provided in subsections (2) and (3) of this section, if an employer willfully fails to pay any wages or compensation of any employee whose employment ceases, as provided in ORS 652.140 and 652.145, then, as a penalty for the nonpayment, the wages or compensation of the employee shall continue from the due date thereof at the same hourly rate for eight hours per day until paid or until action therefor is commenced."

" '3. The claims of the representative plaintiffs are typical;

" '4. The representative parties will fairly and adequately protect the intent of the class; [and]

" '5. The representative parties have complied with ORCP 32 H.'

"* * * The trial court stated that the 'requirements of ORCP 32 A have been met, and under ORCP 32 B a class action is a superior method of adjudication.' In response to the bank's concerns, the trial court stated:

" 'While it is true that there may be contested facts in many of the cases (perhaps 25%), both sides would be motivated to resolve most of these cases after further discovery. Furthermore, the remaining issues could be reasonably dealt with by taking advantage of the flexibility of the trial court in managing class action cases.' "

235 Or App at 662-63 (bracketed alteration in *Belknap*).

The named plaintiffs in the class action at issue in this case—Thomas, Gillaspie, and Hale—were all members of the *Belknap* class.[4] Accordingly, pursuant to ORCP 32 F(1),[5] each of them, like the rest of the *Belknap* class, received notice of the pending *Belknap* lawsuit and an opportunity to opt out of the class. Rather than opting out, Thomas, Gillaspie, and Hale submitted claim forms to the court, affirmatively seeking damages from defendant as members of the *Belknap* class. *See* ORCP 32 F(2).[6]

---

[4] Thomas's employment with defendant ended on November 12, 2002; Gillaspie's employment with defendant ended on October 20, 2001; and Hale's employment with defendant ended on September 10, 2001.

[5] ORCP 32 F(1) provides, in pertinent part:

"When ordering that an action be maintained as a class action under this rule, the court shall direct that notice be given to some or all members of the class under subsection E(2) of this rule, shall determine when and how this notice should be given and shall determine whether, when, how, and under what conditions putative members may elect to be excluded from the class."

[6] As relevant here, ORCP 32 F(2) provides:

"(i) Prior to the entry of a judgment against a defendant the court shall request members of the class who may be entitled to individual monetary recovery to submit a statement in a form prescribed by the court requesting affirmative relief * * *."

After class certification in *Belknap* was granted in July 2004, "pretrial maneuvering ensued." 235 Or App at 663. The plaintiffs in *Belknap* received class-wide discovery from defendant, and, based on that discovery, defendant moved, initially unsuccessfully, to decertify the class. *Id.* More maneuvering ensued, and "[t]he carbon footprint of the trial court file grew deep." *Id.* at 664.

In July 2007, after four and one-half years of litigation, defendant renewed its motion to decertify the *Belknap* class. *Id.* The trial court agreed with defendant, and, in September 2007—roughly four months before this action was filed in Jackson County—the Multnomah County Circuit Court granted the motion to decertify the *Belknap* class. *Id.* We recounted the trial court's reasoning at length in our opinion in *Belknap* affirming that ruling:

> "The court found 'that class treatment is not a superior method of adjudicating the case in a fair and efficient manner. ORCP 32 B.' The court explained:
>
> " 'Plaintiff[s have] throughout claimed and assured the court that the case would essentially be resolved by the documents. While [the bank's] record keeping may have its problems, it appears that [the bank] has complied with the legal requirements of employment record keeping. The documents leave many different types of factual issues unresolved in most, if not all, of the some six hundred or more claims filed or expected to be filed. To resolve these factual issues, witnesses will have to be called and, in most if not virtually all cases, the resolution of one individual's factual issues will have no impact on resolving another's claim.
>
> " '* * * * *
>
> " 'After extensive discovery and motion practice and in the face of the reality presented by the number of individual fact determinations for a large group of individual claimants, plaintiff[s have] offered no plan to efficiently resolve the necessary fact issues at trial. The court has asked plaintiff[s] to articulate a trial plan. Most recently plaintiffs have continued to avoid answering the court's request, but suggested that the plaintiffs' extensive motion practice close in to the trial date will resolve many claimants' cases, and that they cannot

offer a plan until the results of the motion are known. Additionally, plaintiffs suggest that the court would be able to resolve damage issues without a trial. The plaintiffs have not provided sufficient details. The court has little confidence that plaintiffs will present a viable, efficient trial plan in a timely manner.

" '* * * * *

" 'In re-analyzing the case at this point in time, with the benefit of the discovery process, the results of the motion practice, and knowledge of the nature of the claims made and the defenses asserted, the court concludes that class treatment is not a superior method in resolving the controversy. In deciding this motion, the court on its own considered various schemes of partial decertification, but with each, in the final analysis, it was more an exercise in mitigating the problems than creating a process that results in class treatment being a superior method of adjudication.' "

235 Or App at 664-65 (emphasis added).[7]

Following the trial court's order to decertify the *Belknap* class, the named plaintiffs, Belknap and Brulc, proceeded to trial on their own claims. *Id.* at 665. After judgment was entered, they appealed, assigning error to, among other things, the trial court's ruling to decertify the class. *Id.* In June 2010, we affirmed that decision. *Id.* at 667.

B. *Related class actions*

As *Belknap* was backing and filling between 2003 and 2008, plaintiffs' counsel brought a number of other proposed class action lawsuits against defendant, all involving claims and putative classes similar, and in some instances nearly identical, to those involved in *Belknap*. Those actions included, at least, the following:

---

[7] The *Belknap* trial court amplified its core concerns in its letter opinion, stating:

"Early on in the case, it was unknown how many class members existed and how many would make claims. If the majority of the claims could be determined by the documents, with a small percentage having factual issues needing individual testimony, that could have been tolerated and dealt with by an appropriate trial plan. But now, clearly, that is not the case."

(Footnote omitted.)

- *Rivera v. U. S. National Bank Association,* Multnomah County Circuit Court Case No. 0305-05045, seeking, among other things, penalty wages pursuant to ORS 652.150 and proposing a class consisting of defendant's former Oregon employees whose employment had ended between May 2000 and May 2003. The plaintiffs' class-related claims and some of the named plaintiffs' individual claims were dismissed in September 2006, and a stipulated judgment was entered in January 2008, before the proposed class action was filed in this case. The plaintiffs appealed from that judgment, and that appeal was dismissed by order on November 4, 2008.

- *Lowdermilk v. U. S. Bank National Association,* Multnomah County Circuit Court Case No. 0603-03335, seeking, among other things, penalties for untimely paid termination wages pursuant to ORS 652.150 for a proposed class consisting of (a) all of defendant's Oregon employees who had terminated their employment in the three-year period preceding the filing of the complaint, March 29, 2003 to March 29, 2006, as well as (b) those putative class members encompassed by the *Rivera* and *Belknap* complaints. *See also Ross v. U. S. Bank Nat. Ass'n,* 542 F Supp 2d 1014, 1019 (ND Cal 2008) (describing nature of class and claims in *Lowdermilk*). *Lowdermilk* was still pending when the trial court heard defendant's motion to dismiss in this case.

- *Ross v. U. S. Bank National Association,* Case No. C-07-2951SI (ND Cal), seeking, among other things, penalties for untimely paid termination wages pursuant to ORS 652.150 for a proposed class consisting of all of defendant's former employees in Oregon, California, and Washington who had terminated their employment between April 2004 and April 2007. *See Ross,* 542 F Supp 2d at 1018-19.[8]

   Finally, in mid-January 2008, several months after the *Belknap* court decertified the *Belknap* class, plaintiffs'

---

[8] On February 13, 2008, before the trial court denied defendant's motion in the present action, the federal district court in *Ross* stayed the claims raised by the Oregon class members because, among other factors, they were "substantially similar" to the claims in, *inter alia, Lowdermilk.* In the district court's view, a stay of the Oregon class claims was appropriate because "all indications" were that, in bringing those claims as part of the *Ross* class action, the plaintiffs were engaging in forum shopping. *Ross,* 542 F Supp 2d at 1021-23.

counsel filed three new proposed class actions—including this case—in three separate Oregon counties: *Davis v. U. S. Bank National Association*, Multnomah County Circuit Court Case No. 0801-00906; *Bassett v. U. S. Bank National Association*, Coos County Circuit Court Case No. 08-CV0066; and *Thomas v. U. S. Bank National Association*, Jackson County Circuit Court Case No. 080289L3 (the present case). Each of those actions alleged identical ORS 652.150 penalty wage claims on behalf of (a) the former members of the *Belknap* class who submitted claims in *Belknap* and (b) defendant's former employees who had given at least 48 hours' notice and had terminated their employment in the three years preceding the filing of the complaint. Significantly, the named plaintiffs in each of those actions were former members of the *Belknap* class and purported to represent the former members of the *Belknap* class.[9]

C.  *The present class action*

As noted, on January 18, 2008, plaintiffs Thomas, Gillaspie, and Hale—all former members of the *Belknap* class—instituted the present class action in Jackson County Circuit Court, raising claims for ORS 652.150 penalty wages and attorney fees. Plaintiffs' initial complaint proposed to represent a class that consisted of

"Plaintiffs and all other[ ] similarly situated class members who were subject to Oregon wage and hour laws and ended their employment with [defendant],

"a)   between January 2, 2000, and January 2, 2003, and who provided not less than 48 hours prior notice and were due wages that were not paid all wages [*sic*] on their termination date when required by ORS 652.140 and submitted claims in the *Belknap v. U. S. Bank*, Multnomah County case no 0301-00042, and,

"b)   within the three years prior to the date of filing of the complaint herein provided [defendant] with not less than 48 hours prior notice of their termination, and were

---

[9] Before the trial court considered defendant's motion to dismiss in this case, the plaintiffs in *Davis* had dismissed the class claims that they had raised there. On April 15, 2008, the trial court in *Bassett* dismissed the class claims without prejudice.

due wages which were not paid on their final day of employment when required by ORS 652.140."

Thus, the proposed class consisted of two categories of plaintiffs. The first consisted of former members of the *Belknap* class who had submitted claims in the *Belknap* class action. The second consisted of defendant's former employees who had terminated their employment between January 18, 2005 and January 18, 2008, but otherwise suffered the same alleged injury as those in the *Belknap* class action. In their first amended complaint, plaintiffs narrowed their proposed class definition to include only those former employees who had "worked or lived" in 24 named Oregon counties, *viz.*: Josephine, Jackson, Klamath, Lake, Harney, Malheur, Deschutes, Crook, Grant, Baker, Jefferson, Wheeler, Wallowa, Union, Umatilla, Morrow, Gilliam, Sherman, Wasco, Hood River, Multnomah, Clackamas, Marion, and Washington counties.[10]

In April 2008, defendant moved to dismiss or, in the alternative, strike plaintiffs' class-related claims. In advancing that motion, defendant contended as follows: (1) Issue preclusion—specifically, as predicated on the *Belknap* court's order decertifying the *Belknap* class—bound the subclass of former *Belknap* plaintiffs and precluded litigation of the class certification issue as to those plaintiffs. (2) Alternatively, pursuant to ORCP 21 A(3), the class claims should be dismissed because the same claims, on behalf of the same or nearly identical proposed classes, were pending in other jurisdictions. (3) Also, alternatively, any subclass of defendant's former employees who had terminated their employment between January 18, 2005 and January 18, 2008, should be dismissed for lack of a class representative because the three named plaintiffs all belonged to the *Belknap* class (whose employment with defendant had terminated between January 2, 2000 and January 2, 2003).

---

[10] Several days before amending the complaint in this case, plaintiffs' counsel filed an amended complaint in *Bassett*. As noted, *see* 244 Or App at 464-65, the purported class definitions in the original complaints filed in *Bassett* and the present class action were identical. In the amended complaint in *Bassett*, however, plaintiffs' counsel narrowed the class definition to encompass only those class members who "worked or lived" in 12 named Oregon counties—the 12 of Oregon's 36 counties not listed in the amended complaint in the present class action.

In response, plaintiffs argued that issue preclusion did not apply because the certification issue was not identical to that litigated in the *Belknap* case. Specifically, plaintiffs contended that issue preclusion was inapposite because the proposed class in the present action was not congruent with the *Belknap* class in that (1) the proposed class here included only those members of the *Belknap* class who "worked or lived" in 24 of Oregon's 36 counties, as opposed to all 36 counties in *Belknap*; and (2) while the *Belknap* class encompassed only former employees terminated between January 2, 2000 and January 2, 2003, the proposed class here also included employees terminated between 2005 and 2008.[11]

Plaintiffs further contended that the "other action pending" limitation of ORCP 21 A(3) was inapplicable because none of the other cases pending against defendant involved "the same parties," as required by ORCP 21 A(3), in that each of those cases was brought by different named plaintiffs.

Finally, with respect to whether the three named plaintiffs (none of whose employment ended after 2003) could act as class representatives for persons with claims based on termination of their employment between 2005 and 2008, plaintiffs asserted that the latter were not members of some separate and distinct class but were, instead, (like the named plaintiffs) members of a *single class* of persons, all of whom had suffered the same injury—*viz.*, not having their termination wages paid timely by defendant. Thus, plaintiffs asserted, notwithstanding that each of the named plaintiff's employment with defendant ended long before 2005, they could adequately represent the interests of members of that "single class" whose employment ended thereafter.

The trial court, after oral argument, denied defendant's motion to dismiss or strike the class claims. In its operative order, the court framed the following issues for our consideration by way of an interlocutory appeal pursuant to ORS 19.225:

---

[11] While the parties were in the process of briefing this case on appeal, plaintiffs filed a "Motion to Remand Case to Trial Court," so that they could move the trial court to amend the complaint to further narrow the proposed class definition. The Appellate Commissioner denied that motion as untimely.

"1.   Does the ruling of the court in *Belknap v. U. S. Bank*, Multnomah County Case No. 0301-00042 ('*Belknap*'), decertifying the *Belknap* class action preclude plaintiffs from bringing the class action claims in this action?

"2.   Does the existence of the other pending actions involving late-payment class claims against U. S. Bank bar plaintiffs from maintaining the class action claims in this case?

"3.   Can the three named plaintiffs in this case bring a class action for a class consisting of employees who departed U. S. Bank during the three-year period preceding the filing of the complaint in this case (January 17, 2005 to January 17, 2008), when all three named plaintiffs departed U. S. Bank several years before that time period?"

We subsequently granted defendant's application for an interlocutory appeal.

## II.   ANALYSIS

On appeal, the parties generally reprise their arguments to the trial court. As we will explain, we conclude that issue preclusion arising from the *Belknap* trial court's decertification of the *Belknap* class is conclusive as to the impropriety of the certification of the class that plaintiffs propose here. As amplified below, that is so because (1) the inclusion of former *Belknap* class members is intrinsic to the single class that plaintiffs posit here and (2) the *Belknap* decertification order conclusively determines that those persons'/putative class members' claims must be individually litigated and are not properly susceptible to class treatment. 235 Or App at 664-65.

Before turning to their particular application here, we briefly summarize the pertinent principles of issue preclusion.[12] Issue preclusion permits a party who has obtained a valid and final determination on an issue in a prior proceeding to avoid relitigation of that same issue in a subsequent

---

[12] Issue preclusion can be based on constitutional principles, a statute, or the common law. *Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 103, 862 P2d 1293 (1993). Here, the parties do not contend that constitutional principles or a statute governs issue preclusion in this case; accordingly, we focus our analysis on the common-law doctrine. *See State v. Romanov*, 210 Or App 198, 202, 149 P3d 1224 (2006), *rev den*, 342 Or 633 (2007).

proceeding provided that that issue was "actually litigated and determined in the prior action * * * [and] was essential to the judgment." *State Farm Fire & Cas. v. Reuter*, 299 Or 155, 158, 700 P2d 236 (1985). The purposes of the doctrine are to prevent parties from being harassed by successive, duplicative proceedings and to promote the efficient use of judicial resources. *North Clackamas School Dist. v. White*, 305 Or 48, 50-51, 750 P2d 485, *modified on recons on other grounds*, 305 Or 468, 752 P2d 1210 (1988).

Common-law issue preclusion applies when five conjunctive requirements are satisfied: (1) the issues in the two proceedings must be "identical"; (2) the issue must have been "actually litigated" in the earlier proceeding and "essential to a final decision on the merits in the prior proceeding"; (3) the party sought to be precluded must have had "a full and fair opportunity to be heard on that issue"; (4) the party sought to be precluded must have been a party or in privity with a party to the prior proceeding; and (5) the prior proceeding must have been "the type of proceeding to which this court will give preclusive effect." *Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 104, 862 P2d 1293 (1993). The party asserting issue preclusion bears the burden of proof on the first, second, and fourth requirements, whereupon the burden shifts to the party against whom preclusion is asserted to show that the third and fifth requirements are not met. *Barackman v. Anderson*, 214 Or App 660, 667, 167 P3d 994 (2007), *rev den*, 344 Or 401 (2008). In this case, the parties' dispute centers on the first four elements.

As noted, the issue before the *Belknap* court was whether it should allow decertification of a statewide class that included defendant's former employees who had terminated their employment between January 2, 2000 and January 2, 2003, and who had given 48 or more hours' notice of intent to terminate their employment, but were not paid timely termination wages pursuant to ORS 652.140. In reaching its decision to decertify the *Belknap* class, the trial court considered the issue of whether class treatment was a superior method of adjudicating plaintiffs' case under ORCP 32 B. *Belknap*, 235 Or App at 664.

Here, plaintiffs defined the proposed class in their first amended complaint to include defendant's former employees who lived or worked in 24 Oregon counties and who had given 48 or more hours' notice of intent to terminate their employment, but were not paid timely termination wages pursuant to ORS 652.140, and who either (1) had submitted claims in *Belknap* or (2) had terminated their employment between January 18, 2005 and January 18, 2008. Accordingly, as noted, the proposed class at issue in this case differs from the *Belknap* class in two respects. First, unlike the *Belknap* class, which was a statewide class action, the proposed class in this case is limited to those employees who have "worked or lived" in 24 Oregon counties. Second, unlike the *Belknap* class, which included employees who had terminated their employment between January 2000 and January 2003, the proposed class in this case also includes defendant's former employees who had terminated their employment between January 18, 2005 and January 18, 2008.

Defendant contends that, notwithstanding those differences, the class certification issue in this case is "identical" for issue preclusion purposes to the class *de*-certification issue that was actually litigated and was essential to the decision in *Belknap*. Defendant further contends that the three named plaintiffs here were actually represented by and in privity with the class representatives in *Belknap* at the time that they unsuccessfully resisted defendant's efforts to decertify the *Belknap* class.

We begin with the "identity" of issues. The essential issue determined by the *Belknap* class decertification order was the propriety of treatment of claims of hundreds of defendant's former employees arising from alleged untimely payment of wages upon termination of their employment between 2000 and 2003. In resolving that issue, the *Belknap* trial court, as noted, emphasized the diversity of individualized factual issues and the overwhelming predominance of those matters relative to matters common to the proposed class as a whole. 244 Or App at 463 n 7.

Although the class proposed here is not congruent with that decertified in *Belknap*, the dispositive issue with respect to certification of the single class proposed here is,

ultimately and essentially, the same as that which was dispositive in *Belknap*. To be sure, as plaintiffs highlight, the proposed class here is, in one respect, less inclusive than the *Belknap* class in that the former includes *Belknap* class members from 24, rather than all 36, Oregon counties. But plaintiffs' emphasis of that distinction misses the mark—the proposed class here would include *Belknap* class members not only from 24 counties, but also Oregon's three most populous counties (Multnomah, Washington, and Clackamas), and—excepting Lane County—six of the seven most populous counties (Marion, Jackson, and Deschutes).[13] Thus, any incongruity with the *Belknap* class is illusory and immaterial to the core considerations underlying the *Belknap* decertification determination and, thus, to the "identity" of issues for purposes of issue preclusion.[14] *Accord Rees v. BP America Production Co.*, 211 P3d 910 (Okla Civ App 2008) (holding that the plaintiff was precluded from bringing a class action on behalf of a subset of a proposed class that was denied certification in a previous case in which the plaintiff was an unnamed class member).

Nor does the fact that the class proposed here is *more* inclusive than the *Belknap* class in one respect—*viz.*, as also including former employees terminated between 2005 and 2008—detract from the identity of the core, dispositive issue. That is so because plaintiffs, without qualification, seek certification of a single, undifferentiated class consisting of *both* the former *Belknap* class members in 24 counties and those employees whose employment terminated between 2005 and 2008. The former are an integral component of the proposed class; plaintiffs do not suggest that, failing their inclusion, a class of only the latter should be certified. Accordingly, if the *Belknap* decertification order is given preclusive effect as to the former, requiring that their claims be individually litigated, the single class that plaintiffs propose must fail.

---

[13] *See Oregon Blue Book* 254 (2011-2012).

[14] Indeed, to conclude otherwise would permit parties to avoid the preclusive effect of a determination as to class certification through marginal manipulations of the contours of the proposed class, *e.g.*, "all *Belknap* class members in 35 counties" or "all *Belknap* class members except those whose employment was terminated on November 5, 2003."

For the same reasons, the dispositive issue here was "actually litigated" in *Belknap*. An issue is "actually litigated" when "the factual and legal issues that the plaintiff raises in the second case were *actually* adjudicated and essential to the determination of the first case." *Ram Technical Services, Inc. v. Koresko*, 240 Or App 620, 632, 247 P3d 1251 (2011) (emphasis in original). *See also Restatement (Second) of Judgments* § 27 comment d (1982) ("When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated * * *."). In *Belknap*, the parties properly submitted, and the trial court determined, the class certification issue three times: first, when the named plaintiffs in *Belknap* applied for, and received, class certification in 2004, which defendant opposed, 235 Or App at 662-63; second, when defendant moved for decertification, and the motion was denied, *id.* at 663; and, finally, when defendant renewed the decertification motion in 2007, which the trial court granted, *id.* at 664. Plaintiffs then appealed the trial court's judgment and assigned error to the trial court's decertification decision, a decision that we ultimately affirmed on appeal. *Id.* at 667. Thus, the dispositive issue here was not only "actually," but exhaustively, litigated and adjudicated.

With respect to the third requisite of issue preclusion, plaintiffs have pointed to no evidence that they were denied the opportunity to fully and fairly litigate the class certification issue in *Belknap*. *See Barackman*, 214 Or App at 667 (describing burden of proof with respect to the third *Nelson* element). Rather, as noted, the parties fully briefed and argued the issue before certification was initially granted and did so again, later, when the trial court reconsidered the evidence and the parties' arguments in light of defendant's renewed motion for decertification. There is no indication that the named plaintiffs in *Belknap* were "denied the opportunity to adduce the evidence or make the arguments that [they] needed to prevail" on the propriety of class certification in that case. *Id.* at 668 n 3. We note moreover that the named plaintiffs in *Belknap* had every incentive to vigorously litigate the issue of class certification. *Cf. Stanich v. Precision Body and Paint, Inc.*, 151 Or App 446, 455, 950 P2d 328 (1997), *abrogated on other grounds by Barackman*,

214 Or App at 667 (party's incentive to litigate issue encompassed within full and fair opportunity to litigate analysis).

The applicability of issue preclusion here thus reduces to the fourth *Nelson* element—and, specifically, whether the named plaintiffs here were in privity with the named plaintiffs in *Belknap* at the time the *Belknap* court rendered its decertification decision. *See Nelson,* 318 Or at 104. The Oregon Supreme Court has explained that privity attaches to "persons who are not parties to an action but who are connected with it in their interests are affected by the judgment with reference to interests involved in the action, as if they were parties." *Wolff v. Du Puis,* 233 Or 317, 322, 378 P2d 707 (1963), *overruled in part by Bahler v. Fletcher,* 257 Or 1, 474 P2d 329 (1970). Privity likewise encompasses "those who control an action although not parties to it; *those whose interests are represented by a party to the action*; and successors in interest to those having derivative claims." *Id.* (citing *Restatement of Judgments* § 83 (1942)) (emphasis added). However, privity will not be found for purposes of issue preclusion "unless the result can be defended on principles of fundamental fairness in the due-process sense." *Id. See also Bloomfield v. Weakland,* 339 Or 504, 511, 123 P3d 275 (2005). Consequently, a third party will be precluded from litigating an issue in a subsequent proceeding "only when it is realistic to say that the third party was fully protected in the first trial." *Wolff,* 233 Or at 322.

The named plaintiffs in this case (Thomas, Gillaspie, and Hale), as former members of the *Belknap* class, were in privity with named representatives in the *Belknap* class action. The premise underlying a class action is that the representative, as a member of the class, has an interest in the litigation that is shared by the unnamed class members. *See* Alba Conte and Herbert B. Newberg, 1 *Newberg on Class Actions* § 1:2, 14 (4th ed 2002) ("The fundamental nature of a class suit is its representative status, i.e., it consists of a class representative and those absent members, who share a common interest but whose joinder is impracticable, who are represented.").

In this instance, Thomas, Gillaspie, and Hale—by virtue of the *Belknap* court's decision to certify—*were* members of the *Belknap* class and, thus, represented by the class

representatives there, beginning with the *Belknap* court's certification order and continuing up to the moment of decertification. That is, they were members of the *Belknap* class throughout the time that defendant's initial motion to decertify, and its ultimately successful renewal of that motion, were being litigated. Plaintiffs do not claim that the *Belknap* class representatives or their attorneys did not adequately represent their interests in the *Belknap* action; indeed, the latter argument would be difficult to maintain given that the class representatives in *Belknap* were represented by the same law firm that represents plaintiffs in this case. Accordingly, because plaintiffs' and the former *Belknap* class members' interests were represented by the named representatives to the *Belknap* class, they were in privity with the class representatives in *Belknap*. *See, e.g., Taylor v. Sturgell*, 553 US 880, 884, 128 S Ct 2161, 171 L Ed 2d 155 (2008) (noting that "[i]n a class action * * * a person not named as a party may be bound by a judgment on the merits of the action, if she was adequately represented by a party who actively participated in the litigation").[15]

We thus conclude that the requisites of issue preclusion are established here as to the impropriety of class treatment of claims by members of the former *Belknap* class included in plaintiffs' proposed class. That, in turn, is dispositive of the propriety of class certification of the single, "all-or-nothing" class that plaintiffs propose. Accordingly, the trial court erred in denying defendant's motion to dismiss plaintiffs' class-related allegations.[16]

Finally, notwithstanding our conclusion that the class allegations must be dismissed, a remand is required. That is so because defendant does not contest the ability of the named plaintiffs to seek individual relief. Accordingly, here, as in *Belknap*, the denial of class certification is not preclusive of the named plaintiffs' ability to pursue their claims individually.

Reversed and remanded.

---

[15] We emphasize that our privity analysis in this case pertains to the preclusive effect to be accorded an order of class decertification, as opposed to an initial denial of class certification. We imply no view as to the latter.

[16] Given our analysis and disposition, we need not address defendant's alternative contentions.