Argued and submitted March 16, reversed and remanded October 12, 2011

Kay RUSSELL,
an individual,
*Plaintiff-Appellant,*

*v.*

U. S. BANK NATIONAL ASSOCIATION,
dba U. S. Bank,
*Defendant-Respondent.*

Multnomah County Circuit Court
090811372; A144289

265 P3d 1

A.E. Bud Bailey argued the cause for appellant. With him on the briefs were J. Dana Pinney, and Bailey Pinney & Associates LLC.

Kevin H. Kono argued the cause for respondent. With him on the brief were Christopher F. McCracken, Carol J. Bernick, and Davis Wright Tremaine LLP.

Before Sercombe, Presiding Judge, and Nakamoto, Judge, and Hadlock, Judge.*

---

* Hadlock, J., *vice* Rosenblum, S. J.

HADLOCK, J.

## HADLOCK, J.

Plaintiff appeals a judgment dismissing her claim for 30 days of statutory penalty wages against defendant, her former employer. The trial court dismissed the complaint on the ground that plaintiff had not filed it within the applicable statutory limitation period. On appeal, plaintiff argues that the trial court erred when it ruled that the three-year limitation period started running on the first day that plaintiff could have sued for penalty wages, *i.e.*, the day immediately following the one on which her earned wages were due and defendant did not pay them. According to plaintiff, her claim for 30 days of statutory penalty wages did not accrue until the day on which all of those penalty wages became due, *i.e.*, the thirtieth day after defendant allegedly should have paid plaintiff her earned wages. We agree with plaintiff and, accordingly, reverse and remand.

In this appeal from the dismissal of plaintiff's complaint, we review for legal error, "viewing the allegations, as well as all reasonable inferences, in the light most favorable to plaintiff, the nonmoving party." *Mason v. Mt. St. Joseph, Inc.*, 226 Or App 392, 394, 203 P3d 329, *rev dismissed*, 347 Or 349 (2009). Plaintiff alleged that she gave defendant at least 48 hours' notice of her intention to quit her employment, and she claimed that defendant was, therefore, required to pay her all of her earned wages on the last day she worked: August 31, 2001.[1] Plaintiff also alleged that defendant did not pay her earned wages until December 11, 2001. Consequently, plaintiff claimed, she was entitled to $4,152 in statutory penalty wages, representing 30 days of full-time employment at her pay rate of $17.30 per hour. Plaintiff claimed those penalty wages under ORS 652.150, which provides, in part:

"(1)    Except as provided in subsections (2) and (3) of this section, if an employer willfully fails to pay any wages or compensation of any employee whose employment

---

[1] "When an employee who does not have a contract for a definite period quits employment, all wages earned and unpaid at the time of quitting become due and payable immediately if the employee has given to the employer not less than 48 hours' notice, excluding Saturdays, Sundays and holidays, of intention to quit employment." ORS 652.140(2)(a).

ceases, as provided in ORS 652.140 and 652.145, then, *as a penalty* for the nonpayment, the wages or compensation of the employee shall continue from the due date thereof at the same hourly rate for eight hours per day until paid or until action therefor is commenced. However:

"(a)  In no case shall the penalty wages or compensation continue for more than 30 days from the due date[.]"

(Emphasis added.)

The parties agree that the three-year limitation period specified in ORS 12.100(2) applies to claims for penalty wages.[2] They also agree that, not counting time during which the limitation period was tolled, plaintiff filed her complaint three years and eight days after September 1, 2001, the day following her last day of work.[3] Whether plaintiff's complaint was timely therefore depends on when the three-year limitation period began to run: (1) on September 1, 2001 (the first day following the date on which defendant should have paid plaintiff her earned wages), as defendant argues and the trial court held; (2) on September 30, 2001 (after all 30 days of penalty wages became due), as plaintiff contends;[4] or (3) on a day or days between those two extremes.

---

[2] That statute provides:

"An action upon a statute for penalty or forfeiture, where the action is given to the party aggrieved, * * * shall be commenced within three years."

ORS 12.100(2).

[3] Plaintiff alleged that the statute of limitations was tolled during the pendency of *Belknap v. U. S. Bank National Association*, Multnomah County Case No. 0301-00042, filed as a class action on January 2, 2003, and decertified as a class action on December 7, 2007. *See Thomas v. U. S. Bank National Association*, 244 Or App 457, 260 P3d 711 (2011) (discussing history of the *Belknap* class action litigation); *Belknap v. U. S. Bank National Association*, 235 Or App 658, 234 P3d 1041 (2010), *rev den*, 349 Or 654 (2011). For purposes of the statute-of-limitation issue, defendant does not dispute that tolling allegation.

Because we agree with plaintiff that the statute of limitation on her penalty-wage claim did not begin to run until the thirtieth day following her last day of work, we do not address her alternative argument that a second class-action suit tolled the statute of limitation for an additional period of time.

[4] It may be that, under plaintiff's theory, the limitation period for her claim for the entire 30 days of penalty wages did not actually start running until October 1 (not September 30), as defendant theoretically could have avoided liability for the thirtieth day of penalty wages by paying plaintiff's earned wages at the end of the day on September 30. That one-day difference does not matter to our resolution of this case, however, so we do not address it further in this opinion.

The answer to that question depends on when an employee's cause of action for penalty wages accrues. *See* ORS 12.010 (limitation periods described in ORS chapter 12 begin to run "after the cause of action shall have accrued"). In that regard, the key point is that the employee's cause of action under ORS 652.150(1) is for the penalty wages themselves, not for the earned wages that the employer should have paid the employee on his or her last day of work. That point is stark in this case, as defendant had paid plaintiff her earned wages long before she filed suit to recover penalty wages.

Moreover, penalty wages are not compensatory "damages" for harm caused by the employer's failure to timely pay earned wages, as defendant suggests. Rather, penalty wages are just that—a penalty. *See North Marion Sch. Dist. #15 v. Acstar Ins. Co.*, 343 Or 305, 316, 169 P3d 1224 (2007) (penalty wages "are punitive, not compensatory, in nature"). Consequently, the cause of action for penalty wages does not accrue, and the statute of limitation cannot begin to run, until that *penalty* is owed. Put another way, it is not the employer's initial wrongful act of failing to pay earned wages that triggers the statute of limitation for a claim for penalty wages. Rather, the limitation period can begin to run only when the employer commits the *additional* wrongful act of willfully failing to pay the earned wages on a day following the date on which those wages were originally due, as only that later act makes the employer liable for a penalty. *See North Marion Sch. Dist. #15 v. Acstar Ins. Co.*, 205 Or App 484, 492, 136 P3d 42 (2006), *aff'd*, 343 Or 305, 169 P3d 1224 (2007) ("by definition, [penalty wages] accrue *after* the worker's employment 'ceases' simply as a penalty against the employer" (emphasis in original)).

The next question is whether an employee who sues for penalty wages under ORS 652.150 has a single claim for the total amount of penalty wages the employer allegedly owes, or instead has up to 30 separate claims—each for one day of penalty wages—corresponding to each of the days on which the employer continued not to pay the employee's

earned wages.[5] If the employee has a single penalty-wage claim, then the three-year limitation period began to run when that single claim accrued. On the other hand, if the employee has a series of up to 30 distinct penalty-wage claims, then a separate three-year limitation period began to run on each of the days on which those claims accrued.[6] In choosing between those alternative models, we look first to the statute's text and context, keeping in mind that "[p]rior construction of a statute by this court is always relevant to our analysis of the statute's text." *State v. Bryan*, 221 Or App 455, 459, 190 P3d 470 (2008), *rev den*, 347 Or 290 (2009).

Although the text of ORS 652.150 does not make the point explicitly, we believe that the statute's wording reflects a legislative intent to create a single, unitary claim for penalty wages. The statute provides that, as *"a* penalty" for the nonpayment of earned wages, the employee's wages "shall continue" for up to 30 days. ORS 652.150(1) (emphasis added). The legislature's use of the article "a" followed by the singular noun "penalty" suggests that it intended one penalty to flow from an employer's continuing failure to pay earned wages, not multiple penalties corresponding to the multiple days that may pass before payment is made. The repeated use of the singular noun "penalty" in several subsections of ORS 652.150 reinforces our conclusion that the legislature contemplated that an employer who does not timely pay an employee's earned wages becomes liable for only a single penalty, even though the magnitude of that penalty depends on the duration of the employer's failure to pay.[7]

---

[5] Penalty wages can accrue for a maximum of 30 days, but will stop accruing earlier if either of two events occurs before the 30-day period has run: (1) the employer pays the employee's earned wages; or (2) the employee sues for the unpaid wages. ORS 652.150(1).

[6] That question is important in this case because—not counting the time during which the three-year limitation period was tolled—plaintiff filed her claim for 30 days of penalty wages three years and eight days after September 1, 2001, the first day that penalty wages allegedly started to accrue. Plaintiff argues, therefore, that her complaint was timely with respect to at least the last 22 days of penalty wages, even if her claim to the first eight days of those penalty wages is time barred.

[7] *See* ORS 652.150(1)(b) ("A penalty may not be assessed under [certain circumstances]"); ORS 652.150(2) (under certain circumstances, "the penalty may not exceed 100 percent of the employee's unpaid wages"); ORS 652.150(3)(b) (under specified circumstances involving commissions, "the penalty may not exceed the amount of the unpaid commission or $200, whichever is greater"); ORS 652.150(5)

That construction of ORS 652.150 is consistent with our decision in *Wilson v. Smurfit Newsprint Corp.*, 197 Or App 648, 107 P3d 61, *rev dismissed*, 339 Or 407 (2005), in which we addressed whether the plaintiffs were entitled to prejudgment interest on an award of penalty wages under ORS 652.150. We first explained that penalty wages accrue over time:

> "The penalty wage, which is a continuation of the earned wages, accrues daily until paid but for no more than 30 days. Thus, at the end of the second business day, the employer incurs a penalty (and the employee obtains entitlement to damages) in the amount of one day's wages; at the end of the third business day, the employer incurs a penalty (and the employee becomes entitled to damages) in the amount of two days' wages; etc. Because ORS 652.150 imposes a 30-day maximum, if, as here, earned wages remain unpaid after 30 days, the penalty has fully accrued * * *."

*Id.* at 673-74 (citation omitted). Then—and most significant for this case—we held that interest on the penalty wages "begins to run at [the] point" when the penalty has "fully accrued." *Id.* at 674. Thus, interest on all 30 days of penalty wages "began 30 days" following the employer's initial nonpayment. *Id.*

*Wilson* necessarily is premised on the idea that an employee has but a single claim for penalty wages, the magnitude of which depends on the duration of the employer's continued failure to pay earned wages. That understanding of ORS 652.150 explains our pronouncement that a penalty of a certain magnitude exists soon after the employer's initial failure to pay (*e.g.*, on the second business day after earned wages were due, the employer owes a penalty "in the amount of one day's wages") and a *different* penalty, of a greater magnitude, comes into existence later (*e.g.*, on the third business day after earned wages were due, the employer owes a penalty "in the amount of two days' wages"). Thus, a new and larger penalty accrues with each day that passes, essentially superseding the smaller penalty that existed the previous

---

("The employer may avoid liability for the penalty described in this section by showing financial inability to pay the wages or compensation at the time the wages or compensation accrued.").

day. That is why prejudgment interest is calculated based on the entire amount of penalty wages, starting to run only on the last day on which any penalty wages accrued. If an employee had a distinct claim for each day of penalty wages, prejudgment interest would be calculated separately on each of those claims, starting on the day that each claim accrued. *Wilson* precludes that result. Similarly, *Wilson* defeats any argument that the statute of limitation for *part* of an employee's penalty-wage claim may start to run before the final day on which the employer incurs liability to that employee for penalty wages. The employee's claim for the entire amount of penalty wages does not accrue until that final day, triggering the three-year limitation period on the employee's unitary claim for all of the penalty wages owed.

Here, plaintiff's claim for 30 days' penalty wages did not accrue until the thirtieth day following the day on which plaintiff's earned wages allegedly were due and unpaid. Not counting the tolling period, plaintiff filed her complaint within three years of that date. Accordingly, the trial court erred when it dismissed plaintiff's claim as time barred.

Reversed and remanded.