Argued and submitted January 6, appeal from supplemental judgment
dismissed; limited judgment reversed and remanded July 29, 2015

EAGLE-AIR ESTATES
HOMEOWNERS ASSOCIATION, INC.,
an Oregon non-profit corporation,
acting by and through
Charles Harp, Cyndie Harp,
Michael Morgan, and Janet Morgan,
*Plaintiffs-Respondents,*

*v.*

Bruce HAPHEY,
Vernon Goodsell, and John Schibel,
individually,
*Defendants-Appellants,*

*and*

EAGLE-AIR ESTATES
HOMEOWNERS ASSOCIATION, INC.,
an Oregon non-profit corporation,
*Defendant.*

Deschutes County Circuit Court
04CV0050MA; A151460

354 P3d 766

Margaret Fiorino argued the cause for appellants. With her on the briefs was Matthew J. Kress.

Michael W. Peterkin argued the cause for respondents. With him on the brief was Peterkin & Associates.

Before Ortega, Presiding Judge, and Egan, Judge, and Garrett, Judge.

GARRETT, J.

**GARRETT, J.**

The subject of this appeal is the trial court's limited judgment in favor of plaintiffs, who sued defendants derivatively on behalf of the Eagle-Air Estates Homeowners Association (HOA or association), on their claims for breach of contract and conversion, and the court's supplemental judgment awarding attorney fees. The dispute is the most recent episode of longstanding litigation among members of the HOA, and we have dealt with the parties on many previous occasions.[1] The crux of plaintiffs' allegations is that defendants, who are former directors of the association, caused harm to the HOA by imposing unauthorized member assessments to pay attorney fees in related litigation brought by plaintiffs against the HOA and some of these same defendants. In particular, defendants assert that the trial court erred in its interpretation of provisions of the HOA's covenants, codes, and restrictions (CCRs), which concerned whether the assessment was a "special assessment" and, thus, expired on December 31, 2003. We conclude that the trial court erred in its interpretation of the assessment provisions in the CCRs. Accordingly, we reverse and remand the limited judgment. We dismiss the appeal from the supplemental judgment.[2]

In order to explain the claims and defenses at issue, we briefly recite the procedural history. Plaintiffs sued defendant Goodsell, the developer of Eagle-Air Estates, a planned

---

[1] *Goodsell v. Eagle-Air Estates Homeowners Assn.*, 249 Or App 639, 278 P3d 133, *rev den*, 352 Or 665 (2012); *Eagle-Air Estates Homeowners Assn. v. Harp*, 234 Or App 218, 227 P3d 1242 (2010); *Morgan v. Goodsell*, 220 Or App 329, 185 P3d 1117 (2008); *Morgan v. Goodsell*, 198 Or App 385, 108 P3d 612 (2005); *Morgan v. Goodsell*, 198 Or App 533, 109 P3d 803, *rev den*, 339 Or 406 (2005).

[2] Defendants also appeal a supplemental judgment awarding plaintiffs attorney fees that was entered after the entry of the limited judgment, which disposed of two of plaintiffs' three claims at trial. At that time, a general judgment had not been entered. Because the supplemental judgment for attorney fees is not valid, we dismiss the appeal from that judgment. *See White v. Vogt*, 258 Or App 130, 144, 308 P3d 356 (2013) ("We have previously held that a 'supplemental judgment arising from a limited judgment but entered before entry of the general judgment is not valid' and, therefore, not appealable. *Interstate Roofing, Inc. v. Springville Corp.*, 217 Or App 412, 426-27, 177 P3d 1, *adh'd to as modified on recons*, 220 Or App 671, 188 P3d 359, 224 Or App 94, 197 P3d 27 (2008), *aff'd in part and rev'd in part on other grounds*, 347 Or 144, 218 P3d 113 (2009); *see also* ORS 18.005(17) (a supplemental judgment is 'a judgment that may be rendered *after a general judgment* pursuant to a legal authority' (emphasis added)). Accordingly, we must dismiss the appeal from the supplemental judgment [for attorney fees].").

community subdivision, in a derivative action in 2003.[3] *See Morgan v. Goodsell*, 198 Or App 385, 108 P3d 612 (2005) (*Morgan I*). Plaintiffs' claims in *Morgan I* revolved around Goodsell having retained a reversionary interest in an airstrip adjacent to the development. *Id.* at 388. Plaintiffs also named the HOA as a defendant, and, accordingly, it retained counsel. At membership meetings on May 18, 2002, and February 1, 2003, the HOA members approved assessments for attorney fees for the HOA's defense in *Morgan I*. Ultimately, plaintiffs lost on all claims in that action.

The HOA then sued plaintiffs, alleging trespass as a result of their continued use of the airstrip after failing to pay required assessments. Plaintiff Morgan counterclaimed, alleging that the February 1, 2003, authorization for a membership assessment to pay attorney fees in *Morgan I* had expired on December 31, 2003, and that the HOA had wrongfully continued to impose the assessment after that date. The trial court ruled in favor of the HOA on the trespass claim, but ruled in favor of Morgan on the counterclaim and awarded him a judgment for the amount of attorney-fee assessments that he had paid after December 31, 2003. The basis for the trial court's ruling on that issue—which is central to the current appeal—was a provision in the CCRs that limits the duration of "special assessments" to the end of the calendar year in which the special assessment was adopted. Thus, the trial court concluded that the most recent approval for the attorney-fee assessment, effective February 1, 2003, expired on December 31 of that year and that any assessments collected beyond that date had occurred without the required approval of the members. We affirmed the trial court's judgment without opinion. *Eagle-Air Estates Homeowners Assn. v. Harp*, 234 Or App 218, 227 P3d 1242 (2010) (*Eagle-Air*).

Having prevailed on his counterclaim against the HOA, Morgan turned his sights to the defendants in this action, who were the directors of the association at the time of *Morgan I* and *Eagle-Air*. In this case, Morgan and other plaintiffs alleged claims for breach of contract, but also negligence and conversion, contending that defendants

---

[3] Charles Harp, a plaintiff here, was not a plaintiff in *Morgan I*.

wrongfully caused the HOA to spend money and incur debt for the earlier litigation by hiring an attorney without membership approval and levying assessments to pay that attorney. Plaintiffs moved for partial summary judgment on the conversion and breach of contract claims.

In a 2007 letter opinion, the trial court ruled that defendants could be liable if plaintiffs could prove actual damages, but that the court could not determine "whether damages were actually incurred" because:

"1.  Plaintiffs' claims are limited to attorney fees wrongfully incurred or paid after April 24, 2003.

"2.  Two cases which may affect the outcome [*Morgan I* and *Eagle-Air*] are now on appeal.

"3.  The record is insufficient to establish what fees were billed, what were paid, and what are subject to a credit of write[-]off by [the attorney hired to represent the HOA in the prior litigation]."

Following the trial court's 2007 ruling, and after the appeals were resolved, defendants moved for reconsideration of that ruling. The trial court granted defendants' motion, and the parties engaged in additional briefing. Defendants argued, among other things, that the attorney-fee assessments were authorized and proper pursuant to the provision in the CCRs that grants the board of directors the authority to collect assessments to "defray the common expenses." Defendants also argued that, even if the assessments were unauthorized, a derivative action was improper because the *association* (as opposed to individual members) had not been damaged by any collection of unauthorized assessments.

Ultimately, in a 2009 ruling, the trial court adhered to its 2007 ruling as to liability, explaining that "[t]he court again finds that the board does not have carte blanche to incur debt, make assessments or encumber members' properties without membership approval, in contravention of the clear and unambiguous provisions of the [CCRs]." The court also found that plaintiffs had been damaged in the amount of $24,480. That figure reflected the total assessments for attorney fees that the HOA collected after December 31, 2003, the date on which the court deemed the authorization

for the attorney-fee assessment to have expired. Defendants appeal the limited judgment.

Defendants raise the following four assignments of error: (1) the attorney-fee assessments were authorized, and, in concluding to the contrary, the trial court misconstrued the applicable provision in the CCRs; (2) even if the trial court correctly interpreted the CCRs, the court nonetheless erred in imposing liability because (a) any unauthorized assessments caused no harm to the HOA as an entity, and (b) plaintiffs failed to overcome the business judgment rule; (3) even if a derivative action could be brought, plaintiffs lacked standing to bring it because of their adversity to the HOA in related cases; and (4) no statutory basis exists for the trial court's award of attorney fees.

We need not address the second, third, and fourth assignments of error, because we agree with defendants regarding the first assignment of error, which is dispositive. The trial court's conclusion that defendants were liable for breach of contract and conversion was based on its determination that defendants failed to obtain membership authorization for assessments to pay attorney fees. The HOA membership, however, specifically approved an assessment for attorney fees on February 1, 2003. The trial court's ruling was, therefore, based on its view that that assessment was a "special assessment" within the meaning of the CCRs, which expired on December 31, 2003. As we will explain, the trial court's construction of the CCRs was erroneous.

The trial court's interpretation of CCRs presents a question of law. *See Little Whale Cove Homeowners Ass'n, Inc. v. Harmon,* 162 Or App 332, 338, 986 P2d 616 (1999) (interpretation of CCRs presents a question of law) (citing *Valenti v. Hopkins,* 324 Or 324, 926 P2d 813 (1996)).

The provisions regulating assessments are found in Article IV of Eagle-Air's CCRs. The relevant sections in Article IV are the following:

"Section 2. PURPOSE OF ASSESSMENTS: The assessments levied by the Association shall be used exclusively for the purpose of maintaining the Common Area, Roadway/Taxiway, Airport, and promoting the health,

safety, enjoyment, and welfare of the residents in the properties and in particular for the improvement and maintenance of the Taxiways owned and used by the Association. Properties owned by Declarant that remain unsold will be exempt from assessment for maintenance until such time as originally sold.

"Section 3.   BASIS OF ANNUAL ASSESSMENTS:

"a.   Unless changed by vote of the membership hereinafter provided, the maximum annual assessment against any lot or parcel shall be one hundred eighty dollars ($180.00) per year which shall be used for Common Area, Roadway/ Taxiway, and Airport maintenance. The Board of Directors of the Association may, after consideration of the current maintenance cost and the financial requirements of the Association, fix the annual assessment at an amount less than the maximum.

"b.   From and after January 1, of the year immediately following the conveyance of the first Lot to an Owner, the maximum annual assessment may be increased each year by not more than five (5%) percent above the maximum assessment for the previous year without a vote of the membership.

"c.   From and after January 1, of the year immediately following the conveyance of the first Lot to an Owner, the maximum annual assessment may be increased above five percent (5%) by a vote of 75 percent (75%) of each class of members who are voting in person or by proxy, at a meeting duly called for this purpose.

"* * * * *

"Section 4.   SPECIAL ASSESSMENTS FOR CAPITAL IMPROVEMENTS:   Upon vote of the Association in the manner hereinafter set forth, the Association may levy, in addition to annual assessments, a special assessment in any calendar year applicable to that year only, for the purpose of defraying in whole, or in part, the cost of construction or reconstruction or expected repair or replacement of a described capital improvement upon the Common Area, Roadway/Taxiway, and

Airport including necessary fixtures and personal property relating thereto, as determined by the Board.

"Section 5. VOTING AND NOTICES FOR SPECIAL ASSESSMENTS AND CHANGE OF MAXIMUM ASSESSMENTS: Any special assessments or change of maximum annual assessment must have the assent of 75 percent (75%) of the vote of all members at a meeting duly called for that purpose, written notice of which shall be sent to all members at least thirty (30) days in advance of the meeting, setting forth the purpose of the meeting."

Thus, read together, sections 2, 3, and 5 of Article IV of the CCRs provide that annual assessments for "maintaining the Common Area, Roadway/Taxiway, Airport, and promoting the health, safety, enjoyment, and welfare of the residents" may increase up to five percent each year without a vote of the members, and by more than five percent, provided that 75 percent of the members vote to approve the increase. Section 4 separately provides that, in addition to the annual assessments, the HOA may levy "a special assessment in any calendar year applicable to that year only, for the purpose of defraying in whole, or in part, the cost of construction or reconstruction or expected repair or replacement of a described capital improvement." Those special assessments are subject to the 75 percent vote requirement in section 5.

It is undisputed that the members of Eagle-Air approved an assessment for attorney fees to pay for the *Morgan I* litigation. It is undisputed that that approval occurred at a membership meeting on February 1, 2003, at which at least 75 percent of the members approved of the assessment. Thus, the assessments after December 31, 2003, were valid unless the attorney-fee assessment was a "special assessment" within the meaning of Article IV of the CCRs, in which case the authority for the assessment expired effective December 31, 2003.

Under Article IV, however, special assessments are specifically those levied for "Capital Improvements." Although "capital improvement" is not a defined term in the CCRs, it is commonly understood to mean a permanent structural improvement to property. *See Black's Law*

*Dictionary* 237 (9th ed 2009) (defining capital expenditure as "[a]n outlay of funds to acquire or improve a fixed asset" and noting that it is "[a]lso termed [a] *capital improvement*" (emphasis in original)); *see also Webster's Third New Int'l Dictionary* 332 (unabridged ed 2002) (defining capital expenditure as "an expenditure for long-term additions or betterments properly chargeable to a capital assets account"). The CCRs comport with that understanding. Section 4 refers to the "cost of construction or reconstruction or expected repair or replacement of a described capital improvement upon the Common Area, Roadway/Taxiway, and Airport including necessary fixtures and personal property." That is the language of real property. An assessment to pay for attorney fees in litigation does not resemble anything else contemplated by Section 4 and is not the type of expense that an ordinary person would regard as a "capital improvement." Thus, although the attorney-fee assessment may have been an unusual assessment, it was not a "special assessment" for purposes of section 4 of the CCRs. It is more reasonably regarded as an assessment to promote the "welfare of the residents" as expressly contemplated in section 2. Accordingly, pursuant to section 3(b), the assessment could continue to be levied after the end of the calendar year, without a new vote of the members, as long as it did not increase by more than five percent.

Rather than make any substantive argument as to why the attorney-fee assessment was a special assessment, plaintiffs argue that that issue was resolved in *Eagle-Air*, with preclusive effect. It is true that the trial court in *Eagle-Air* ruled that the attorney-fee assessment was a special assessment that could not be levied after December 31, 2003. We disagree, however, that plaintiffs may use the doctrine of issue preclusion in this case. Issue preclusion bars a party from relitigating an issue if the following conditions are met: (1) the issues in the two proceedings are identical; (2) the issue was actually litigated in the prior proceeding; (3) the party sought to be precluded had a full and fair opportunity to litigate the issue; (4) that party must have been a party in the prior litigation or in privity with the party; and (5) the prior proceeding must have been of the type that the court will give preclusive effect. *Hunt v. City of Eugene*, 249 Or App

410, 426-27, 278 P3d 70 (2012) (quoting *Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 104, 862 P2d 1293 (1993) (internal quotation marks omitted)). The party asserting issue preclusion bears the burden of proof on the first, second, and fourth elements; if that party carries its burden, then the burden shifts to the party against whom preclusion is asserted to show that the third and fifth elements are not met. *Thomas v. U. S. Bank National Association*, 244 Or App 457, 469, 260 P3d 711 (2011). In order for issue preclusion to apply, "the issues must be identical and necessary to the judgment in the prior proceeding." *Ditton v. Bowerman*, 117 Or App 483, 488, 844 P2d 919 (1992).

The parties focus on the fourth element, and plaintiffs assert that defendants were in privity with the HOA, a party in prior litigation with plaintiffs. However, none of the defendants in this action was a party in *Eagle-Air*, which involved the HOA's claim against Morgan and Morgan's counterclaim against the HOA. The sum total of plaintiffs' argument is that, in *Eagle-Air*, "[d]efendants at trial, acting in privity with the Association, defended [against the] counterclaim for a declaration that the February 1, 2003 assessment was a 'special assessment,' the identical issue tried to a limited judgment previously litigated before this court." Plaintiffs do not explain how defendants were in "privity" with the HOA in *Eagle-Air*, but we presume that they base that conclusion on the fact that defendants were members of the HOA's board of directors at the time, and, in that capacity, made the decision to hire counsel for the HOA and levy the attorney-fee assessment. Plaintiffs cite no authority for the proposition that an individual is in "privity" with a corporation, for purposes of issue preclusion, merely by virtue of being a director of that corporation. Relevant authority is to the contrary.

As a general matter,

"[a] judgment will not have preclusive effect on a nonparty unless the non-party was in privity with a party to the previous action. Privity is essentially a conclusory term that describes the relationship between a party and a nonparty that is deemed close enough to warrant the application of claim or issue preclusion to the non-party."

*Ditton,* 117 Or App at 486-87. Privity "encompasses those who control an action although not parties to it; *those whose interests are represented by a party to the action*; and successors in interest to those having derivative claims." *Thomas,* 244 Or App at 473 (internal quotation marks omitted; emphasis in original).

In *Ditton,* the defendants, who were shareholders in a corporation, argued that issue preclusion foreclosed the plaintiffs' subsequent lawsuit against the defendants because the defendants were in privity with the corporation in a prior lawsuit that the plaintiffs had filed against the corporation. *Id.* at 485-86. That was evidenced, according to the defendants, because "as the sole shareholders, they controlled the litigation on behalf of the corporation in the previous action." *Id.* at 487.

We rejected that assertion and concluded that no privity existed between the defendants and the corporation in the latter litigation based on the former suit. Our analysis in that case was premised on the *Restatement (Second) of Judgments* § 59 (1982), which pertains to the preclusive effects of judgments on corporations, its officers, directors, stockholders, and members. That section provides, in relevant part:

> "Except as stated in this Section, a judgment in an action to which a corporation is a party has no preclusive effects on a person who is an officer, director, stockholder, or member of a non-stock corporation, nor does a judgment in an action involving a party who is an officer, director, stockholder, or member of a non-stock corporation have preclusive effects on the corporation itself.
>
> "(1)  If a relationship exists between a corporation and an officer, director, stockholder, or member of a non-stock corporation, such as that of principal and agent, indemnitee and indemnitor, or successor in interest to property, from which preclusive effects follow under rules governing that relationship, the judgment has preclusive effects in accordance with those rules.
>
> "(2)  The judgment in an action to which the corporation is a party is binding under the rules of res judicata in a subsequent action by its stockholders or members suing derivatively on behalf of the corporation, and the judgment in a

derivative action by its stockholders or members is binding on the corporation."

Further, "[a] corporation is for most purposes treated as a jural person distinct from its stockholders, members, directors, and officers" and "[a] judgment in an action to which a corporation is a party does not in general bind or redound to the benefit of its stockholders, members, or managers, except insofar as it affects the corporation itself." *Id.* at comment a.[4]

Under that framework, we rejected the *Ditton* defendants' arguments that they were in privity with the corporation because of their status as shareholders. *Ditton,* 117 Or App at 488 (reasoning that the defendants "were not principal and agent, indemnitee and indemnitor, or successors in interest to property, and this [was] not a derivative action").

In this case, as noted earlier, plaintiffs' theory as to why defendants are barred by issue preclusion from challenging the trial court's view of the attorney-fee assessments is apparently based solely on the facts that defendants were members of the HOA's board of directors during that litigation, and, in that capacity, made the decision to hire counsel for the HOA and levy the attorney-fee assessment. Plaintiffs argue that defendants "at trial, acting in privity with the [HOA] defended [Morgan's] counterclaim for a declaration that the February 1, 2003 assessment was a 'special assessment,' the identical issue tried to a limited judgment previously litigated before this court."

Those facts are insufficient to show that defendants were in privity with the HOA for the purposes of issue preclusion. Plaintiffs describe no relationship between the defendants in this action and the association in *Eagle-Air* that would support a conclusion that defendants "control[led] [the] action." *Thomas,* 244 Or App at 473. Nor does Morgan explain how defendants' individual interests were "represented by a party to the action" rather than those of the HOA, generally. *Id.* (emphasis omitted). In short, plaintiffs rely on

---

[4] These general rules apply to both for-profit and nonprofit corporate entities. *See Restatement* § 59 comment a.

the mere fact that defendants were directors of the HOA, but, as explained in the *Restatement*, that status is plainly not enough to establish privity.

We conclude, in short, that defendants are not barred by the issue-preclusion doctrine from arguing that the attorney-fee assessment was not a "special assessment" under the CCRs. As explained above, we also agree with that argument on the merits. Accordingly, we conclude that the trial court erred in granting partial summary judgment for plaintiffs and that the limited judgment must be reversed.

Appeal from supplemental judgment dismissed; limited judgment reversed and remanded.