Argued and submitted March 23, 2021; portion of judgment on claim for denial of construction plans vacated and remanded, otherwise affirmed May 25, 2022

Alfred P. SANTORO
and Joan E. Santoro,
Trustees of the
Santoro and Smith Family Trust,
dated 12/23/1996,
*Plaintiffs-Appellants,*

*v.*

EAGLE CREST ESTATE
HOMESITE OWNERS ASSOCIATION,
an Oregon nonprofit corporation,
*Defendant-Respondent.*

Deschutes County Circuit Court
16CV39203; A171260

512 P3d 828

Plaintiffs, who own properties at the Eagle Crest Estate Homesites, sued defendant, Eagle Crest Estate Homesite Owners Association, after defendant's architectural review committee (committee) denied plaintiffs' request to construct an oversized garage door to accommodate a recreational vehicle. On appeal, plaintiffs assign error to the trial court's ruling that the committee acted within its authority to deny plaintiffs' request. Plaintiffs also challenge the trial court's judgment permitting defendant's charge of certain application processing fees and a pavement damage assessment. *Held*: The Court of Appeals concluded that the trial court erred in upholding the committee's denial of plaintiffs' proposed construction plans without examining whether the committee exercised its discretion in good faith as required by the contract. However, the trial court did not err in concluding that defendant had authority to collect application processing fees and the pavement assessment from plaintiffs.

Portion of judgment on claim for denial of construction plans vacated and remanded; otherwise affirmed.

Beth M. Bagley, Judge.

J. Christian Malone argued the cause for appellants. Also on the briefs were Peterkin Burgess and Megan K. Burgess.

Ashleigh Edwards argued the cause for respondent. On the brief were Tracy J. Frazier and Chock Barhoum, LLP.

Before Mooney, Presiding Judge, and Joyce, Judge, and DeVore, Senior Judge.*

JOYCE, J.

Portion of judgment on claim for denial of construction plans vacated and remanded; otherwise affirmed.

_____

* Joyce, J., *vice* DeHoog, J. pro tempore.

**JOYCE, J.**

Plaintiffs, who own properties at the Eagle Crest Estate Homesites (Eagle Crest) sued defendant, Eagle Crest Estate Homesite Owners Association, after defendant's architectural review committee denied plaintiffs' request to construct an oversized garage door to accommodate a recreational vehicle (RV). On appeal, plaintiffs assign error to the trial court's ruling that the committee acted within its authority to deny plaintiffs' request. Plaintiffs also challenge the trial court's judgment permitting certain application processing fees and a pavement damage assessment. We vacate and remand the trial court's decision respecting the committee's denial of the construction plans because the court failed to examine whether the committee exercised its discretion in good faith as required by the contract. We affirm, however, as to the trial court's judgment allowing the disputed fees.

## BACKGROUND FACTS

The relevant facts on appeal are undisputed. Plaintiffs purchased their first lot in Eagle Crest in 2011. Eagle Crest is a planned residential community. As a planned residential community, the homeowners are bound by a recorded declaration of covenants, conditions, and restrictions for Eagle Crest Estate Homesites (CC&Rs). Among other things, those CC&Rs establish a homeowner's association (HOA). The HOA has a sub-group architectural review committee (committee). The CC&Rs require all homeowners to submit their proposed construction plans to the committee for approval before construction.

In compliance with that requirement, in 2012, plaintiffs submitted their proposed plans and built a home after they obtained an approval from the committee. During that process, plaintiffs paid an $825 application processing fee and a $500 pavement assessment. In 2016, plaintiffs purchased a second lot in Eagle Crest. Plaintiffs again submitted their proposed construction plans to the committee and paid defendant the required fees, including an $825 application processing fee and a $500 pavement damage refundable deposit. The 2016 construction plans included a garage with a 12-foot door capable of accommodating a RV.

The committee notified plaintiffs that it conditionally approved their plans with two modifications: (1) replacing the over-sized garage door with a standard one no taller than eight feet; and (2) reducing the proposed paving in the back-out area of the driveway. The committee cited section 5.2(a) of the CC&Rs as authority for its decision and explained that it denied plaintiff's proposed oversized garage for aesthetic reasons. Section 5.2(a) gives the committee broad authority to consider "style, design, appearance, harmony of external design" in determining whether to approve any construction proposal.

Plaintiffs appealed the committee's decision, arguing that neither the CC&Rs nor the committee's Policies and Guidelines (guidelines)[1] expressly prohibit oversized garages and noting that other homes in Eagle Crest have RV-sized garages. The committee unanimously denied plaintiffs' appeal.

Plaintiffs then filed this action for breach of contract and for a declaratory judgment. Plaintiffs argued that the unambiguous terms of the CC&Rs imposed an affirmative duty of good faith on the committee and that it failed to fulfill that obligation by denying plaintiffs' proposal to build an RV garage. Plaintiffs also challenged defendant's authority to charge them the two application processing fees they paid in 2012 and 2016 as well as the pavement assessment fee in 2012.[2]

Central to both parties' arguments—and ultimately to the trial court's decision—was the Supreme Court's decision in *Valenti v. Hopkins*, 324 Or 324, 926 P2d 813 (1996). Because that case is fundamental to understanding the trial court's ruling and the arguments on appeal, we pause our factual recitation briefly to describe it. In *Valenti*, the plaintiffs brought an action against a neighbor who proposed to build a house that would obstruct the plaintiffs' view in violation of certain restrictive covenants. *Id.* at 327.

---

[1] The CC&Rs authorize the HOA board of directors to promulgate a set of committee policies and guidelines that further outline the policies and procedures for projects within the committee's scope of approval authority.

[2] In 2016, plaintiffs paid a $500 "pavement damage refundable deposit" rather than an assessment. Plaintiffs did not contest that deposit.

The CC&Rs specified that any new construction has to be approved by the architectural control committee. *Id.* at 328. The CC&Rs authorized the committee to make final decisions and withhold consent "at its discretion."[3] *Id.* at 328-29. The committee eventually approved the defendants' plans, concluding that, under the operative view protection provision of the CC&Rs, the plaintiffs' lot was not "adjacent" to the defendants' lot. *Id.* at 330.

On appeal, the Supreme Court held that where restrictive covenants unambiguously authorize certain disputes to be resolved by a third party, "the appropriate standard of review" of the court is to "review for fraud, bad faith, or failure to exercise honest judgment" of the HOA's interpretation of the language in the CC&Rs. *Id.* at 335. Because the plaintiffs had not proved that the committee's decision was so tainted, the committee's decision approving the defendants' plans was final and binding. *Id.*

In this case, and based on *Valenti*, defendant argued that, absent any showing of fraud, bad faith, or failure to exercise honest judgment, the trial court had to uphold defendant's decision. Plaintiffs, relying on the CC&R's text, argued that *Valenti* was not the standard under which the trial court was required to review defendant's actions.

After a bench trial, the trial court entered a judgment for defendant. Citing section 5.1 and 5.2(a) of the CC&Rs, the court found that defendant, "like the [committee] in *Valenti*," had broad authority under the CC&Rs to deny plaintiffs' application. The court further found that the committee denied the application because "the RV/oversized garage was not consistent with the overall aesthetic and character of the community." The court then concluded that, because plaintiffs presented no evidence at trial establishing fraud, bad faith, or a lack of honest judgment, defendant acted within its authority and did not breach the contract. The court also found that the CC&Rs and ORS 94.704(6) allowed defendant to collect

---

[3] The covenants also provided that the committee and any member could not be liable for damages for any action or inaction "provided only that the member, in accordance with actual knowledge possessed by him/her, has acted in good faith." *Id.* at 328.

application processing fees and the pavement assessment from plaintiffs.

## DENIAL OF CONSTRUCTION PLANS

In the first through third assignments of error, plaintiffs argue that the trial court erred in upholding the committee's denial of plaintiffs' proposal to construct an RV garage, because the committee failed to comply with the CC&Rs' requirement that the committee act in good faith. In response, defendant argues that, because the CC&Rs grant the committee broad authority to approve or disapprove homeowners' construction plans, under *Valenti*, the court should defer to the committee's decision as long as there is no fraud, bad faith, or failure to exercise honest judgment.

At the outset, we clarify that, contrary to what defendant argues and the trial court appeared to conclude, a court's deferential review of contractual terms under *Valenti* does not apply in every case involving disputes arising from an authorized third party's construction of the CC&Rs. The threshold question, as the court confirmed in *Valenti*, is still one of contract interpretation, *i.e.*, how the CC&Rs restrict the authority of the committee to make final decisions as to homeowners' proposed construction plans. If the CC&Rs grant the committee broad discretion to make final decisions without further limitation, then *Valenti* applies; if the CC&Rs restrict the committee's discretion, then we apply that standard under the CC&Rs.

We thus start with the CC&Rs. Contract interpretation presents a question of law that we review for legal error. *Eagle-Air Estates Homeowners Assn., Inc. v. Haphey*, 272 Or App 651, 656, 354 P3d 766 (2015), *rev den*, 359 Or 166 (2016). In interpretating a contract, the court first "examines the text of the disputed provision, in the context of the document as a whole," inquiring whether the provision at issue is ambiguous. *Yogman v. Parrott*, 325 Or 358, 361-64, 937 P2d 1019 (1997); *see also Batzer Construction, Inc. v. Boyer*, 204 Or App 309, 315-17, 129 P3d 773, *rev den*, 341 Or 366 (2006) (explaining that, in determining whether a contract term is ambiguous, a court must consider evidence of the circumstances of contract formation, if provided by the parties, and that *Yogman* omitted that step only because no

such evidence was presented in *Yogman*). In the absence of an ambiguity, the court construes the words of a contract as a matter of law, and the analysis ends. *May v. Chicago Insurance Co.*, 260 Or 285, 292, 490 P2d 150 (1971); *see also Valenti*, 324 Or at 331 ("Unambiguous contracts must be enforced according to their terms.").

We therefore start with the text and context of the relevant CC&Rs provisions to determine whether the *Valenti* deferential standard applies here. *Yogman*, 325 Or at 361-64. Section 5.1 of the CC&Rs vests power in the committee to "control and approve" all building plans. Section 5.2(a) further provides that "[b]efore commencing any building *** written approval must be obtained from the Committee covering all aspects of such proposed activity, including building and plot plans for all structures erected *** [and] garages and fences[.]" In determining whether to approve any proposal, the committee is given broad authority to consider aesthetic factors, such as "style, design, appearance, [and] harmony of external design[.]" Section 5.4 further states:

> "The decision of a majority of the Committee *** acting *in good faith in its sole discretion*, upon any matters submitted or referred to it, shall be final; provided, however, that such decision may not violate any of the provisions set out in this Declaration."

(Emphasis added.) Thus, the committee's discretion to make final decisions here is limited by a requirement that the committee act "in good faith." By contrast, the committee in *Valenti* was granted "discretion" to make decisions without an affirmative duty to act in good faith.[4] *Valenti*, 324 Or at 328. As a result, the parties here reasonably expect that the committee's decision will be final only if it has met its express obligation to act in good faith under the CC&Rs. We thus conclude that the trial court erred in applying the deferential standard under *Valenti*.

Because we conclude that the trial court applied an incorrect legal standard, we must next determine whether

---

[4] As noted, in *Valenti*, the committee could not be liable in damages if acting in good faith. Although noteworthy, the good-faith provision did not appear in the provision governing the discretion to make decisions.

the error was harmless. *State v. Zamora-Skaar*, 308 Or App 337, 353, 480 P3d 1034 (2020). A court's erroneous application of a legal standard is harmless if "there is little likelihood that the erroneous self-instruction affected the court's verdict." *Id.* at 354.

The error here was not harmless. The trial court's conclusion that defendant did not act in bad faith or with a lack of honest judgment does not necessarily mean that defendant fulfilled its affirmative duty to act in good faith. As observed with regard to contract claims for breach of the implied duty of good faith, it is not necessarily sufficient just to act honestly. *See generally Best v. U. S. National Bank*, 303 Or 557, 564, 739 P2d 554 (1987) ("It is therefore not necessarily sufficient, as the Bank contends, that the Bank acted honestly in setting its [non-sufficient funds (NSF)] fees[.]"). The Supreme Court offered examples of breaches of good faith, *other than* outright dishonesty or clear-cut bad faith:

> "'Subterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified. But the obligation goes further; bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. A complete catalogue of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of power to specify terms, and interference with or failure to cooperate in the other party's performance.'"

*Id*. at 563 (quoting *Restatement (Second) of Contracts* § 205 comment d (1979)). To summarize, the court observed:

> "When one party to a contract is given discretion in the performance of some aspect of the contract, the parties ordinarily contemplate that that discretion will be exercised for particular purposes. If the discretion is exercised for purposes not contemplated by the parties, the party exercising discretion has performed in bad faith."

*Id.* In short, the potential remains, beyond the potential of fraud or a failure to exercise honest judgment, that a decision breached a duty of good faith because it was exercised for purposes not contemplated by the parties.

Absent extrinsic evidence to the contrary, we con-
strue the "good faith" limitation on the committee's dis-
cretion similarly. Accordingly, as a matter of law, the trial
court's conclusion that defendant's conduct lacked bad faith,
dishonesty, or fraud does not necessarily equate to a con-
clusion that defendant acted in good faith and we conclude
that the trial court's error was not harmless. We thus vacate
the trial court's judgment against plaintiffs on defendant's
denial of the construction plans with an RV garage and
remand this case to the trial court to reconsider its decision
in light of this opinion.

## LEVIED FEES AND ASSESSMENTS

In their final assignments of error, plaintiffs con-
tend that the trial court erred in concluding that defendant
was authorized to impose certain fees and assessments: a
$500 pavement assessment in 2012; a $825 application pro-
cessing fee in 2012; and a $825 application processing fee in
2016. Plaintiffs argue that the fees are not permitted under
the CC&Rs and ORS 94.704. On appeal from a bench trial,
"we review the trial court's findings of fact for any evidence
to support them, and its legal conclusions for errors of law."
*State ex rel Rosenblum v. Living Essentials, LLC*, 313 Or App
176, 201-02, 497 P3d 730, *rev allowed*, 368 Or 787 (2021)
(internal citations and quotation marks omitted).

We first address plaintiffs' contention that defen-
dant is not authorized to charge the pavement assessment.
Plaintiffs argue that the assessment does not meet the defi-
nition of "common expense" under ORS 94.704(6),[5] because
the record contains no evidence showing that defendant
actually incurred costs to repair roadways due to plaintiffs'
2012 new home construction.

Our legal analytical framework begins with ORS
94.704(6)'s text and context. *State v. Gaines*, 346 Or 160, 171,
206 P3d 1042 (2009). That subsection of the statute provides:

"Unless otherwise provided in the declaration or bylaws,
any common expense or any part of a common expense

---

[5] Eagle Crest is a planned community, subject to the Oregon Planned
Community Act, ORS 94.550 to 94.783.

benefiting fewer than all of the lots may be assessed exclusively against the lots or units benefited."

For purposes of that statute, "common expense" means "expenditures made by or financial liabilities incurred by the homeowners association and *includes any allocations to the reserve account* under ORS 94.595." ORS 94.550(6) (emphasis added). ORS 94.595(2)(a), in turn, provides that a homeowners association "shall establish a reserve account to fund major maintenance, repair or replacement of all items of common property which will normally require major maintenance, repair or replacement, in whole or in part[.]"

The statutory text defeats plaintiffs' argument that the HOA must incur expense before it can levy assessments under ORS 94.704(6). The reserve account statute expressly permits associations to assess the potential costs and to maintain a reserve account to fund for expenses that "*will* normally require major maintenance, repair or replacement[.]" ORS 94.595(2)(a) (emphasis added). The legislature's use of the future verb tense suggests that the statute allows an association to levy assessments for future "maintenance, repair or replacement" expenses before they actually occur. *See Martin v. City of Albany*, 320 Or 175, 181, 880 P2d 926 (1994) ("The use of a particular verb tense in a statute can be a significant indicator of the legislature's intention."). We thus conclude that ORS 94.704(6) permits an association to levy a pavement assessment and put it in a reserve account to defray the costs associated with improving or maintaining the community roads in the future.

In light of that legal conclusion, we must then determine whether the facts in the record support the trial court's findings that defendant charged the pavement assessment as reserves for the repair and maintenance of community roads in the future, consistent with ORS 94.595. We conclude that they do. The 2011 architectural review committee guidelines allow defendant to charge the assessment and to deposit the money "into the Estate Homesite Owners Association Reserve Fund for roadway wear and tear incurred during periods of construction." Jim Prehoda, defendant's prior property manager, testified that defendant levied the assessment to offset the increased wear and tear

on the common roadways, because new home construction "was a stress on the association's road." Defendant put those collected assessments in its reserve fund specifically for repair and maintenance of roads. Given that evidence, the trial court correctly concluded that defendant could levy the pavement assessment under ORS 94.704(6).

In arguing to the contrary, plaintiffs point to the prefatory language in ORS 94.704(6), "[u]nless otherwise provided in the declaration or bylaws[.]" In plaintiffs' view, even if ORS 94.704(6) permits the assessment, the CC&Rs do not. We disagree. Again, we begin our analysis of the relevant contract provisions here under the template established in *Yogman*, 325 Or at 361-64. The CC&Rs allow defendant "to levy assessments" against homeowners in accordance with article 3. Article 3 enumerates five types of assessments, *i.e.*, annual, special, emergency, remedial, and property tax assessments.[6] Even assuming a pavement assessment does not fit within any of the specified assessment types, nothing in the CC&Rs expressly prohibit defendant to levy such assessments. In short, the CC&Rs do not "otherwise provide" that defendant cannot levy a pavement assessment against plaintiffs.

We turn to plaintiffs' challenge to the application processing fees. We again conclude that the plain text of the CC&Rs and committee guidelines, in context, unambiguously provide defendant authority to charge plaintiffs the application processing fees. *Yogman*, 325 Or at 361. Specifically, section 2.5(i) of the CC&Rs permit defendant "in its sole discretion" to create "various classes of service" and "to make appropriate charges." The architectural review committee is a sub-group of the HOA board and is established to receive, review and approve proposed construction plans for the community. The committee guidelines, promulgated by the HOA board, in turn, require homeowners seeking approval of construction plans to pay $825 for reviews of their proposed plans. Read in conjunction with those provisions, the CC&Rs authorize defendant to act in

---

[6] Defendant did not argue that the pavement assessment qualifies as a "special assessment" under the CC&Rs and the trial court therefore did not address that question.

its sole discretion to charge plaintiffs application processing fees for the committee to perform its duties of reviewing and approving construction plans.

Moreover, imposition of the fees, contrary to plaintiff's argument, is consistent with ORS 94.704(6). That statute expressly allows a homeowner association to charge common expenses against individual owners to cover any "expenditures made by or financial liabilities incurred." Here, the trial court found that the processing fee "covers expenses related to the time and supervision that the [committee], together with the Management Company would need to spend on new construction." That finding is supported by the record. The trial court thus correctly concluded that defendant has authority to charge plaintiffs the disputed application processing fees.

Portion of judgment on claim for denial of construction plans vacated and remanded; otherwise affirmed.