No. 435 May 20, 2026 725

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Alfred P. SANTORO
and Joan E. Santoro,
Trustees of the Santoro and Smith Family Trust,
dated 12/23/1996,
*Plaintiffs-Appellants,*

*v.*

EAGLE CREST ESTATE HOMESITE OWNERS
ASSOCIATION,
an Oregon nonprofit corporation,
*Defendant-Respondent.*

Deschutes County Circuit Court
16CV39203; A184113

Beth M. Bagley, Judge.

Argued and submitted February 18, 2026.

J. Christian Malone argued the cause for appellants. Also on the briefs was Bristlecone Law.

Jordyn Benya argued the cause for respondent. Also on the briefs were Jeffrey W. Hansen and Chock Barhoum LLP.

Before Egan, Presiding Judge, Pagán, Judge, and Walters, Senior Judge.

WALTERS, S. J.

Reversed and remanded.

**WALTERS, S. J.**

This is the second appeal in this contract case, and we again reverse the decision of the trial court. This time, we conclude that the trial court erred in deciding that the defendant did not breach its contractual obligation to act in good faith. Accordingly, we remand for entry of judgment in favor of plaintiffs and in accordance with this opinion.

When, after a bench trial, the party with the burden of persuasion contends on appeal that they were entitled to prevail as a matter of law, "our standard of review is the same as for a directed verdict." *Powers v. Dague*, 342 Or App 569, 572-73, 577 P3d 1161 (2025). "Directed verdict 'is appropriate only when a [party] is entitled to judgment as a matter of law." *Id.* at 573 (quoting *Kelley v. Washington County*, 303 Or App 20, 21, 463 P3d 36 (2020) (citations omitted)). In this case, as we will explain, the relevant facts are undisputed, and the parties' arguments address whether the trial court, sitting as factfinder, applied the correct legal standards. Under those circumstances, "we review to determine whether the court instructed itself incorrectly as to the law." *State v. Zamora-Skaar*, 308 Or App 337, 353, 480 P3d 1034 (2020). As explained below, we conclude that the court did not apply the relevant legal principles and that, under those principles, properly applied, the factfinder could reach only one conclusion—that defendant breached the contract.

## FACTUAL SUMMARY

Plaintiffs purchased a lot in Eagle Crest, a planned residential community, in which

> "the homeowners are bound by a recorded declaration of covenants, conditions, and restrictions for Eagle Crest Estate Homesites (CC&Rs). Among other things, those CC&Rs establish a homeowner's association (HOA). The HOA has a sub-group architectural review committee (committee). The CC&Rs require all homeowners to submit their proposed construction plans to the committee for approval before construction."

*Santoro v. Eagle Crest Estate Homesite Owners Assn.*, 319 Or App 793, 795, 512 P3d 828 (2022) (*Santoro I*). In 2016, in accordance with the CC&Rs, plaintiffs submitted

construction plans that included a garage with a 12-foot door to accommodate a recreational vehicle (RV) (an oversized or RV garage). *Id.* The committee conditionally approved their plans with two modifications: "(1) replacing the over-sized garage door with a standard one no taller than eight feet; and (2) reducing the proposed paving in the back-out area of the driveway." *Id.* at 796. The committee stated that it denied plaintiffs' proposal for "aesthetic reasons," citing section 5.2(a) of the CC&Rs, which gives the committee broad authority to consider "style, design, appearance, [and] harmony of external design" when reviewing construction proposals. *Id.*

Plaintiffs appealed and argued that neither the CC&Rs nor the committee's own guidelines expressly prohibit oversized garages and that other homes in Eagle Crest have RV garages. *Id.* The committee unanimously denied plaintiffs' appeal. *Id.* Plaintiffs then filed an action for breach of contract and declaratory judgment, arguing that the "unambiguous terms of the CC&Rs imposed an affirmative duty of good faith on the committee and that it failed to fulfill that obligation by denying plaintiffs' proposal to build an RV garage." *Id.*

After a bench trial, the trial court ruled for defendant, making the following findings and reaching the following conclusions:

> "Citing section 5.1 and 5.2(a) of the CC&Rs, the court found that defendant *** had broad authority under the CC&Rs to deny plaintiffs' application. The court further found that the committee denied the application because 'the RV/ oversized garage was not consistent with the overall aesthetic and character of the community.' The court then concluded that, because plaintiffs presented no evidence at trial establishing fraud, bad faith, or a lack of honest judgment, defendant acted within its authority and did not breach the contract."

*Id.* at 797.

On appeal, this court held that, under section 5.4 of the CC&Rs, the committee had an express obligation to act in good faith and that, in considering only whether defendant had acted in bad faith, the trial court had applied the

incorrect legal standard. *Id.* at 799. In assessing whether the trial court's error was harmless, we observed that:

> "[t]he trial court's conclusion that defendant did not act in bad faith or with a lack of honest judgment does not necessarily mean that defendant fulfilled its affirmative duty to act in good faith. As observed with regard to contract claims for breach of the implied duty of good faith, it is not necessarily sufficient just to act honestly. *See generally Best v. U. S. National Bank*, 303 Or 557, 564, 739 P2d 554 (1987) ('It is therefore not necessarily sufficient, as the Bank contends, that the Bank acted honestly in setting its [non-sufficient funds (NSF)] fees[.]')."

*Id.* at 799-800 (brackets in *Santoro I*). Quoting *Best*, 303 Or at 563, we explained that

> "'[w]hen one party to a contract is given discretion in the performance of some aspect of the contract, the parties ordinarily contemplate that that discretion will be exercised for particular purposes. If the discretion is exercised for purposes not contemplated by the parties, the party exercising discretion has performed in bad faith.'"

*Id.* at 800. We concluded that there was a potential that the committee's decision was exercised for purposes not contemplated by the parties, that, as a matter of law, the trial court's decision that defendant's conduct lacked bad faith, dishonesty, or fraud did not necessarily equate to a conclusion that defendant acted in good faith, and, therefore, that the trial court's error was not harmless. *Id.* at 801. Accordingly, we remanded the case to the trial court to reconsider its decision in light of our opinion. *Id.*

On remand, the parties agreed that there was no need for a retrial or to reopen the record established during the original bench trial and provided the court with briefing and oral argument. Plaintiffs submitted that the record demonstrated that defendant had violated its contractual obligations, including the obligation to act in good faith, when it denied their building application. Plaintiffs asserted that the contract between the parties expressly authorized them to keep, place, maintain, or park a recreational vehicle, pointing to section 4.9 of the CC&Rs, which provides as follows:

"**4.9   VEHICLES AND PARKING**:

"(a)   **Type Restriction**. No mobile home, *recreational vehicle* (including campers) exceeding 1,500 pounds in gross weight, trailer of any kind, truck with a rated load capacity greater than 3/4 ton, or boat shall be kept, placed, maintained or parked for more than 6 hours or such other period as may be permitted pursuant to the Estate Homesite Association Policies and Procedures on any portion of the Property *except in enclosed garages*, areas designated by the Board, or screened from view in a manner approved by the Architectural Committee."

(Emphases added.) Plaintiffs argued that the committee's authority to deny its application was limited by two sections of the CC&Rs: section 5.4, providing that the committee's decision must be in good faith and "may not violate any of the provisions set out in this Declaration," and section 5.2(b), providing that the committee's authority "shall not be construed as modifying, altering, or waiving any of the provisions" set out in the CC&Rs. Plaintiffs contended that the committee's decision precluding them from building a garage with a door that would enable them to park an RV in that garage modified, altered, waived, or violated the parking provisions of the CC&Rs and that the committee's decision violated its obligation to perform its contractual obligations in good faith.

In an oral ruling from the bench, the trial court disagreed. The court reasserted and readopted its previous factual findings, set out the provisions of the CC&Rs that it considered controlling, including sections 4.9, 5.2 and 5.4, and made the following factual finding:

"The [committee] denied plaintiffs' construction plans because the proposed construction of an oversized garage with 12 foot door was inconsistent with the overall appearance and design aesthetic of the community and would create disunity."

The court then concluded that "defendant acted consistently in accord with and as could reasonably be expected by plaintiffs with respect to the CC&Rs to execute its primary function of ensuring the harmony of external design with declarant's general scheme," and "acted in good faith."

## ARGUMENTS AND ANALYSIS

Before this court, plaintiffs contend, in three somewhat different but related assignments of error, that the trial court failed to correctly address the provision of the contract between the parties that lies at the crux of all three of their arguments—section 4.9 of the CC&Rs, requiring that recreational vehicles be parked in enclosed garages.

In their first assignment of error, plaintiffs argue that the trial court failed to abide by this court's ruling in *Santoro I* and to interpret the contract to determine the scope of authority delegated to the committee. The trial court, plaintiffs insist, merely converted its initial finding that the committee did not lack honest judgment or act in bad faith into an equivalent finding that it acted in good faith. We reject that argument without discussion; the trial court conducted the analysis ordered in *Santoro I*.

In their second assignment of error, plaintiffs argue that section 4.9 expressly authorized them to park an RV in an enclosed garage and that the trial court erred when it failed to conclude that defendant breached the contract by denying their plans to exercise that authority, thereby modifying, altering, waiving, or violating the terms of the contract between the parties.

Defendant responds that the trial court was correct when it concluded,

> "Nothing in the CC&Rs, bylaws or any other governing document requires owners to have or the [committee] to approve oversized garages for RV storage at Eagle Crest lots. The [committee]'s decision to approve or deny construction plans, in this case to deny, does not modify, alter, waive or abrogate any provisions of the CC&Rs."

Defendant argues that the CC&Rs give the committee discretion to deny building requests when their provisions do not require the requested construction. According to defendant, section 4.9 is a permissive provision that *allows* the parking of RVs in enclosed garages but that does not *require* the committee to approve plans to build an oversized garage. Thus, defendant contends, the committee's exercise of its approval authority does not violate, or even modify, alter, or waive, the

provisions of section 4.9; that provision does not require the committee to approve construction of an oversized garage.

To the extent that the terms of a contract are unambiguous, "[c]ontract interpretation presents a question of law that we review for legal error." *Santoro I*, 319 Or App at 798. The express provisions of the CC&Rs are part of the contract between the parties, and, in this respect, defendant's interpretation of their provisions is correct as a matter of law. The committee's denial of plaintiffs' application to build a garage with a 12-foot door did not violate, modify, alter, or waive the provisions of section 4.9. Although that section authorizes the parking of RVs in enclosed garages, it does not expressly require that the committee approve all applications to construct the garages with 12-foot doors.

That is not the end of plaintiffs' argument, however. In their third assignment of error, plaintiffs argue that the trial court erred in failing to find that the committee breached its contractual obligation to act in good faith. Citing *Best*, 303 Or at 563, plaintiffs contend that that obligation is an obligation to effectuate the reasonable contractual expectations of the parties and that, as a matter of law, section 4.9 gives rise to a reasonable expectation that members will be permitted to build garages in which they can park RVs. Plaintiffs submit that, in view of the contractual provisions permitting "recreational vehicles" and "enclosed garages" and the lack of any limitations on garage door height, plaintiffs and other homeowners could reasonably expect that a request to build a garage with a door high enough to permit the storage of an RV would not be disallowed based on the height of the door alone. The undisputed testimony at trial and the assumption that underlies the arguments of both parties and the ruling of the trial court is that an RV cannot be parked in a garage unless the door to the garage is at least 12 feet in height (an "RV" or "oversized" door); an RV cannot be parked in a garage with an eight-foot-high-door (a "regular" or "standard" door).

Defendant responds that an expectation that the committee would approve all requests to build garages with RV doors (RV garages) would be objectively unreasonable. Defendant relies on the committee's contractual right to deny

construction requests for aesthetic reasons and argues that, under the CC&Rs, plaintiffs, as well as the other property owners, must have a reasonable expectation that the committee will maintain and enforce a specific aesthetic, character, and design uniformly across the entire community. To defendant's way of thinking, just as the CC&Rs permit the construction of garages, they also permit the construction of homes, outside storage, and landscaping. But, defendant contends, that permission does not require the committee to approve plans to construct each of those features simply because they meet the definition of a home, storage shed, or landscaping, even if the plans propose construction of a log cabin, a rainbow-colored storage shed, or a garden area for growing vegetables that are likely to attract pests. Defendant contends that plaintiffs' expectation that the terms of the contract should be construed in a manner that prioritizes their design preferences over the interests of the rest of the property owners in the community is unreasonable. According to defendant, the trial court correctly determined that the committee acted in good faith and in accordance with the parties' reasonable expectations when it denied plaintiffs' application because their proposed garage design did not fit with the look, feel, and character of the community.

It is apparent to us that the parties are arguing past each other. The thrust of plaintiffs' good faith argument is not that the committee was required to approve all applications to build RV garages. Plaintiffs seem to recognize that, just as the committee would not be required to approve all applications to build all houses, storage sheds, or landscaping, regardless of their design, the committee was not required to approve all applications to build RV garages. Rather, plaintiffs argue, they reasonably expected that they would be permitted to construct an RV garage of some design. They might not be permitted to construct an RV garage made of logs, painted in rainbow colors, or constituting an attractive nuisance, but, at the very least, they would be permitted to construct a garage of a size and with a door of a height that would permit them to park an RV.

Defendant does not meet that argument. Defendant seems to assume that, if the committee considered the

height of the garage door to be an aesthetic matter, then it is of no consequence that the effect of that decision would be to preclude homeowners from owning RVs and storing them in enclosed garages in accordance with the CC&Rs. The trial court seems to have made that same assumption, ruling as follows:

> "In this matter, defendant acted consistently in accord with and as could reasonably be expected by plaintiffs with respect to the CC&Rs to execute its primary function of ensuring the harmony of external design with declarant's general scheme."

Neither defendant nor the trial court address the question of whether the CC&Rs give rise to a reasonable expectation that the committee's review function will not be exercised to effectively preclude all RV garages.

As we tried to make abundantly clear in *Santoro I*, the duty of good faith requires that parties act in an objectively reasonable manner in the performance and enforcement of their contracts. *Id.* at 799-800; *see Best*, 303 Or at 561-66 (discussing cases and Restatement of Contracts). We quoted *Best* for the proposition that "evasion of the spirit of the bargain" can constitute bad faith, and we specifically instructed that

> "When one party to a contract is given discretion in the performance of some aspect of the contract, the parties ordinarily contemplate that that discretion will be exercised for particular purposes. If the discretion is exercised for purposes not contemplated by the parties, the party exercising discretion has performed in bad faith."

*Santoro I*, 319 Or App at 800 (quoting *Best*, 303 Or at 563). On remand, the trial court found, as a matter of fact, that the committee exercised its discretion for aesthetic purposes, and, based on that finding, reached the legal conclusion that the committee met its obligation of good faith.

That analysis fails to account for the reasonable expectation, arising from the CC&Rs, that homeowners would be able to park RVs in enclosed garages. As a matter of law, in light of the CC&R provisions, the committee's discretion had to be exercised consistently with that

expectation. *See Santoro I*, 319 Or App at 800 (explaining limitations on discretion). The committee may have rejected plaintiffs' construction plans to promote a certain aesthetic, and may have done so in all honesty, but, as a matter of law, defendant's promise to act in good faith precluded it from exercising that authority to effectively ban construction of a garage that plaintiffs had an objectively reasonable expectation they could build. Applying the law correctly to the undisputed facts, the only conclusion a factfinder could reach is that, in denying plaintiffs' construction request because their design provided for an RV-size door, defendant breached its contract with plaintiffs.[1]

We leave it to the trial court to determine, in the first instance, the appropriate remedies for defendant's breach. We remand for entry of judgment in favor of plaintiffs and in accordance with this opinion.

Reversed and remanded.

---

[1] In reaching that conclusion, we do not consider the evidence that plaintiffs proffered and that the trial court considered based on the committee's actions approving the construction of other garages and buildings. The question of whether such evidence is admissible to establish the reasonable expectations of the parties is not before us.